IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| GREG BOWE, *et al.* | :: | CASE NO. 2:22-cv-04266 |
| PLAINTIFF | :: | |
| | :: | JUDGE MARBLEY |
| VS. | :: | |
| CROSS RIVER BANK, et al. | :: | |
| DEFENDANTS | :: | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT TRIVEST PARTNERS, L.P'S MOTION TO DISMISS**

## I. INTRODUCTION

Trivest[1] misrepresents the extensive allegations in Plaintiffs'[2] complaint to paint a picture that it is nothing more than a silent investor in PHS[3]. Nothing could be further from the truth. A plain reading of the allegations contained in Plaintiffs' complaint highlights the extent to which Trivest played an active role in designing and executing a scheme to sell defective solar panels to customers across the United States, including Ohio.

Plaintiffs' opposition to each of Trivest's arguments are summarized here and explained more fully below. Trivest's motion to dismiss should be denied for the following reasons:

- ***Personal Jurisdiction***: Plaintiffs have alleged that Trivest was intimately involved in the daily operations of PHS and actively participated in designing and facilitating a nationwide scheme to defraud customers, including Plaintiffs and numerous other Ohio residents.

---

[1] "Trivest" refers to Defendant Trivest Partners, L.P.

[2] "Plaintiffs" refers to the Plaintiffs mentioned in caption of this pleading.

[3] "PHS" means Defendant Power Home Solar, LLC, d/b/a/ Pink Energy.

1

- **Trivest's involvement** in targeting and personally soliciting Ohio residents to buy faulty solar panels meets the low threshold pleading requirements for personal jurisdiction.

- ***Third-Part Acts***: Plaintiffs seek to hold Trivest accountable for its own acts – not those of third parties. Plaintiffs have alleged that Trivest, independently, and in concert with the other named defendants, designed and facilitated a scheme to defraud Plaintiffs and hundreds if not thousands of other Ohio residents.

- ***Breach of Contract/Warranty***: Plaintiffs' complaint alleges that Plaintiffs entered into a contract with Trivest, PHS, and Defendant Jayson Waller for the sale, installation, and maintenance of a solar panel system. While Trivest may contest that it entered into such a contract with Plaintiffs, that factual contention is insufficient for purposes of a motion to dismiss.

- ***Consumer Sales Practices Act***: the statute of limitations for the Ohio Consumer Sales Practices Act started to run once the solar panels were installed and activated on Plaintiffs' property, not when the contract was signed. The specific date of installation and activation for Plaintiffs' systems require a factual inquiry outside the four-corners of the complaint, thus making a motion to dismiss unwarranted at this stage in the litigation process.

- ***Negligence***: the economic loss doctrine does not foreclose Plaintiffs' negligence claim, where, as here, Plaintiffs have alleged property damage and other damages not contemplated by contract law.

- ***Civil Conspiracy***: Plaintiffs' complaint sufficiently details how Trivest and the other named defendants entered into a conspiracy to sell overpriced and faulty solar panel systems to unwitting customers, including Plaintiffs.

- ***Negligent Hiring/Training***: Plaintiffs' complaint details how Trivest undertook all or nearly all of the hiring efforts in order to facilitate the conspiracy mentioned above and sell hundreds if not thousands of faulty solar panel systems to Ohio customers. Moreover, Trivest is alleged to have, in conjunction with the other defendants, trained its agents to utilize hard-sell and deceptive practices to sell defective solar panel systems.

- ***Fraudulent Misrepresentation***: Plaintiffs' complaint details how Trivest, along with the other named defendants, worked together to design and publish false and misleading claims about the efficiency and quality of their solar systems. Plaintiffs further allege that Trivest misrepresented, through its agents, the nature of various tax credits and other discounts that Plaintiffs would receive in purchasing the solar panel system.

- **First to File:** The First-to-File rule is inapplicable as the cited Michigan case does not assert any of the 13 causes of action that Plaintiffs have asserted in this case and further only involves two of the defendants named in this matter. Additionally, the Michigan Court has not certified the class petition request. As a result, the first-to-file rule is inapplicable to this case.

II. **FACTUAL BACKGROUND**

Trivest purchased a 25% stake in PHS, a company that focused on selling solar systems to customers across the United States, including Ohio. *See* Plaintiffs' Complaint at ¶ 41.

However, Plaintiffs allege that Trivest is more than just an investor in PHS. Unlike other investment companies, Trivest positions itself as a "control-based" private equity investor, meaning that it prefers to direct and control its portfolio of companies. *Id.* at ¶ 6 and 42. In fact, as soon as Trivest made its investment in PHS, it immediately became involved in the day-to-day operations of the company. *Id.* at ¶ 43. As one article, cited by both Trivest and Plaintiffs, states, "[Trivest] got to work implementing a series of improvements, in collaboration with Waller." *See How this Florida PE Firm Helped a Solar Business Grow 15X,* Kevin J. Ryan, Inc.com., https://www.inc.com/kevin-j-ryan/powerhome-trivest-solar-private-equity-growth.html (last accessed 4/11/23). The article further states, "[Trivest's] impact went beyond just more spending power…[Trivest] executives worked with the [PHS] team to optimize the customer journey from beginning to end, starting with the moment a potential client sees an advertisement and all the way through post-installation follow-ups." *Id.*

Plaintiffs' complaint details how Trivest and the other named defendants worked together to "optimize the customer journey." Plaintiffs allege that Trivest and the other named defendants worked together to design and publish false and misleading claims about their solar systems, ranging from the quality and efficiency of the solar systems to the representations that the systems would be maintained and repaired after installation. *See* Plaintiffs' Complaint at ¶ 13-14. These false claims were designed to pull the attention of potential customers and induce them to schedule a visit to discuss the installation of a solar panel system. *Id.* at ¶ 15.

The complaint further alleges that Trivest undertook all or a portion of [PHS's] hiring and talent recruitment responsibilities." *Id.* at ¶ 45. This undertaking included placing job postings for positions ranging from call center employees to master electricians. *Id.* at ¶ 46. These employees, including the sales agents, were trained by Trivest and the other named defendants to use "hard sell tactics" when dealing with customers. *Id.* at ¶ 47. The tactics included such things as providing false

3

cash incentives and an erroneous promise of a tax credit that would cover all or nearly all of the solar panel system's cost. *Id* at ¶ 47-48. These employees and sales agents were also trained to use deceptive tactics such as erroneously stating the terms of the contract and auto-filling Plaintiffs' signatures throughout the purchase agreement without providing them the opportunity to review the agreement. *Id.* at ¶ 49-54.

Plaintiffs allege that in reliance on the false advertisements, developed and published by Trivest and the other named defendants, that they contacted PHS and requested more information on purchasing a solar panel system. *See* Plaintiffs' Complaint at ¶ 15. Plaintiffs allege that agents visited their homes and engaged in these hard-sale and deceptive tactics to sell solar panel systems to them. *Id.* at 17. Plaintiffs allege that the agents who visited their homes were agents for, and trained by, Trivest and the other named defendants. *Id.* at ¶ 16 and 47-49.

After entering into the agreement to purchase, install, and maintain the solar panel systems with Trivest and the other named defendants, Plaintiffs did not have their solar panel system immediately installed. Instead, Plaintiffs waited months before an installation crew and/or sub-contractor crew, hired by Trivest and the other named defendants, arrived at their residence and commenced the "installation" of the solar panel system. *Id.* at ¶ 66. However, the solar panel system was never fully installed as it was never fully or consistently activated. *Id.* at ¶ 70 and 74. Moreover, the installation crew hired by Trivest and the other named defendants caused extensive property damage to Plaintiffs' home during their initial "installation" visit. *Id* at ¶ 70-74. Despite numerous attempts by Plaintiffs to have Trivest and the other named defendants fix the solar panel system, the system is still not fully or consistently operational. *Id.* at ¶ 82-83.[4]

---

[4] Plaintiffs tried to work with the named defendants to resolve the solar panel system issues until as recently as spring or early summer of 2022.

## III. LAW AND ANALYSIS

### A. This Court has Personal Jurisdiction over Trivest for Its Active Involvement in Designing and Facilitating the Sale of Faulty Solar Panel Systems to Ohio Residents, Including Plaintiffs.

Personal jurisdiction with respect to the 14th Amendment's right to due process may be based on either general or specific jurisdiction. *Wuliger v. Positive Living Resources*, 410 F.Supp.2d 701, 705 (N.D. Ohio, 2006). In this matter, Plaintiffs assert that this Court has specific jurisdiction over Trivest. This requires a showing that: (1) a defendant purposefully availed itself of the privilege of acting in the forum state or caused a consequence in the forum state; (2) that the defendant's activities in the forum state are related to the causes of action asserted in the complaint; and (3) the exercise of jurisdiction over a defendant is reasonable. *Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012).

Plaintiffs bear the burden of sufficiently pleading personal jurisdiction. However, when a trial court does not hold an evidentiary hearing, the "burden on the plaintiff is relatively slight, and the plaintiff must only make a prima facie showing that personal jurisdiction exists in order to defeat dismissal. *OnX USA LLC v. Sciacchetano*, 913 F.Supp.2d 473, 476 (N.D. Ohio, 2012) (quoting, *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012 WL 1066784, at *2 (N.D. Ohio, 2012)). In considering the motion to dismiss, a trial court is required to view allegations in the pleadings and the documentary evidence in a light most favorable to the nonmoving party, resolving all reasonable competing inferences in that party's favor. *West v. Trace Am., Inc.*, 2007-Ohio-3311, 2007 WL 1859262 (Ohio Ct. App. 1st Dist. Hamilton County 2007).

Trivest's sole opposition to jurisdiction is the unfounded allegation that "[Plaintiffs] could muster nothing past [Trivest's] ownership interest" in PHS to demonstrate its purposeful

5

availament in Ohio. *See* Trivest's Motion to Dismiss at Page 6. To the contrary, Plaintiffs' complaint details how: (1) Trivest was a hands-on investor whose team of executives worked with the other named defendants to design, implement, and execute a scheme to sell defective solar panel systems to Ohio residents, including Plaintiffs; (2) Trivest either developed or assisted in developing the false claims about the solar systems it was trying to sell—claims that induced Ohio residents, including Plaintiffs, to purchase defective solar panel systems; (3) Trivest undertook all or a portion of the employee and agent hiring needs to facilitate countless sales of its solar panel systems in several states, including Ohio; (4) Trivest along with Waller and the other named defendants trained their employees/agents to use deceptive sales techniques on Ohio customers; (5) Plaintiffs were subjected to these deceptive sales techniques when the agents/employees that Trivest hired and trained arrived at their residence; and (6) Trivest and the other defendants hired installation crews, who improperly installed the solar panel system, and in so doing, caused extensive property damage to Plaintiffs' home. *See* Plaintiffs' complaint at ¶ 14, 24, 39, 42-47, and 54.

These allegations go beyond the mere investor relationship that Trivest alleges it had with PHS. Rather these allegations demonstrate the hands-on approach that Trivest had with the company—an approach that affected potentially hundreds or thousands of Ohio residents, including Plaintiffs. While Trivest may contest Plaintiffs' allegations, the complaint, nevertheless, alleges enough facts to fairly invoke jurisdiction against Trivest.

### B. Trivest is Liable for Its Independent Conduct and the Conduct of its Agents.

Trivest next asserts that dismissal is warranted because all of Plaintiffs' claims "attempt to attribute actions of third parties to Trivest." *See* Trivest's Motion to Dismiss at page 9. In making this argument, Trivest completely ignores the well-settled law that an individual person or company is liable for its own conduct. *In re Fox*, 370 B.R. 104 (B.A.P. 6th Cir. 2007); and *In re*

*Wentland*, 410 B.R. 585 (Bankr. N.D. Ohio 2009). In this case, Plaintiffs have alleged that Trivest's own conduct is actionable. Trivest, by itself and in conjunction with the other named defendants: (1) falsely represented the nature and quality of the solar panel system to Plaintiffs; and (2) hired and trained employees and agents to use hard sale tactics to sell defective solar panel systems. These allegations alone are sufficient to assert liability against Trivest.

However, Trivest is also liable for the conduct of its employees/agents. In their complaint, Plaintiffs assert that Trivest and the other named defendants hired and trained agents/employees to go to Plaintiffs' residence and utilize hard-sale and deceptive trade practices to secure sales, and then hired and trained a group of agents/employees to install the solar panel system. This group of agents/employees, however, installed the system improperly—causing Plaintiffs' property damage and resulting in Plaintiffs' solar panel system never working. These allegations demonstrate a connection between Trivest and the agents, and demonstrate that Trivest is liable for its own conduct.

Despite these allegations, Trivest asserts, in conclusory fashion, that there is no factual material supporting a connection between Trivest and the employees/agents described above. Simply put, this assertion ignores the detailed allegations in Plaintiffs' complaint and ignores the standard for a 12(B)(6) motion to dismiss. While Trivest may contest the factual allegations in Plaintiffs' complaint and assert that the agents who sold and installed the system had no connection to Trivest, such factual disputes do not support a motion to dismiss.

### C. Plaintiffs Sufficiently Pled Their Breach of Contract/Warranty Claims Against Trivest.

Trivest next argues a slew of different one to two paragraph arguments, starting with an allegation that Trivest cannot be held liable for a breach of contract/warranty because it did not enter into a contract/warranty with Plaintiffs. A plain reading of Plaintiffs' First Cause of Action

7

quickly dispels this notion. Specifically, Paragraph 86 states that "[p]ursuant to the terms of the Sales Agreement issued by Pink Energy and its Agent/Employee, the ***Pink Energy Group agreed and promised*** to install, activate and maintain a solar power system that would significantly lower Plaintiffs' electric consumption…" Emphasis added. The complaint goes on to state that "[t]he Pink Energy Group has breached the terms of the Sales Agreement…" *See* Plaintiffs' Complaint at ¶ 88. The "Pink Energy Group" is defined early in Plaintiffs' complaints as including Trivest, PHS, and Defendant Jayson Waller. *Id.* at ¶ 8. While Trivest may contend that it was not a party to the contract, that factual contention is not sufficient to dispute the allegation in Plaintiffs' complaint for purposes of a motion to dismiss. Thus, Plaintiffs have sufficiently pled these causes of action against Trivest.

### D. The Statute of Limitations for Plaintiffs' Consumer Sales Practices Act Violation Claim Did Not Start to Run Until the Solar Panel System was First "Installed."

Trivest incorrectly asserts that the Plaintiffs' statute of limitations for their CSPA claim began to run when the sales agreement was signed. However, the statute of limitations began to run when the solar panel system was first installed. *See e.g.*:*Varavvas v. Mullet Cabinets, Inc.* (Ohio App. 5 Dist., 12-28-2009) 185 Ohio App.3d 321, 923 N.E.2d 1221, 2009-Ohio-6962 (two-year statute arose when cabinet maker installed cabinets); *Price v. KNL Custom Homes, Inc.* (Ohio App. 9 Dist., 02-06-2015) 28 N.E.3d 640, 2015-Ohio-436, *appeal not allowed* 143 Ohio St.3d 1544, 40 N.E.3d 1180, 2015-Ohio-4633 (two-year statute began to run, when the acts and omission occurred during the actual construction of a home); *Grothaus v. Warner* (Ohio App. 10 Dist., Franklin, 10-28-2008) No. 08AP-115, 2008-Ohio-5563, 2008 WL 4712816 (two-year statute of limitations began to run when a law sprinkler system was installed); *Eisert v. Kantner Constr.* (Ohio App. 3 Dist., Auglaize, 10-04-2010) No. 2-10-13, 2010-Ohio-4815, 2010 WL 3836205, unreported (two-year statute of limitations began to run with the home construction **was completed**) (Empahsis Added); and *Quetot*

8

*v. M & M Homes, Inc.* (Ohio App. 7 Dist., Mahoning, 02-25-2013) No. 12 CO 1, 2013-Ohio-752, 2013 WL 793219, unreported (two-year statute was triggered by the contractor's initial construction of the home).

Given the unique circumstances of the solar panel systems, installation requires numerous steps, including: (1) permitting; (2) consultation with a power company; (3) inspection; and (4) activation. As a result, Plaintiffs' installation date was months after the sales contracts were entered into. Then, the system was never fully installed or completed as the "activation" was unsuccessful in getting the systems to perform. Thus, whether the statute of limitations has passed requires a detailed factual inquiry outside the four corners of the complaint to determine when each of the solar systems was "installed" or "completed." Therefore, should Trivest later challenge whether, factually, the statute of limitations for this claim has expired, such an argument would be more suitable for a motion for summary judgment. However, raising such a contention in a motion to dismiss is premature at best.

### E. The Economic Loss Rule is Inapplicable Where, as Here, Plaintiffs Have Alleged Property Damage.

Trivest next argues that Plaintiffs' negligence claims should be barred under the economic loss rule. This rule provides that plaintiffs generally cannot recover for pure economic loss. However, if there is also an additional injury to a person or property, economic loss can be recovered and the rule is inapplicable. In this case, Plaintiffs have asserted that they suffered property damage to their home when the solar panel system was installed. *See* Plaintiffs' Complaint at ¶ 71. Moreover, Ohio law recognizes a party's loss of use of their property as an independent damage, which the Plaintiffs in this case have claimed. § 78:233. Damage, deprivation, loss, or destruction of property—Personal property—Loss or deprivation of use, Baldwin's Oh. Prac. Tort L. § 78:233 (2d ed.). Thus, the economic loss rule is inapplicable.

**F. Trivest Blatantly Misrepresents the Allegations in Plaintiffs' Conspiracy Claim; Plaintiffs have Sufficiently Detailed the Conspiratorial Agreement between Trivest and the Other Named Defendants.**

Trivest asserts that Plaintiffs failed to demonstrate an agreement between Trivest and the other defendants. In fact, Trivest states that Plaintiffs only allege "that Trivest was 'aware' of the misconduct being undertaken by a third-party." *See* Trivest's Motion to Dismiss at Page 16. That is patently false and a simple reading of Plaintiffs' Civil Conspiracy cause of action quickly dispels any debate.

Plaintiffs allege that the cost of the faulty solar systems that PHS and the other defendants sold was greatly overpriced—costing more than double the national average for a solar panel system. *See* Plaintiffs' Complaint at ¶ 192. Plaintiffs further allege that the named defendants, including Trivest, "conspired together to facilitate the sale of the solar systems." *Id.* at ¶ 193. These allegations, especially coupled with the rest of the allegations contained in Plaintiffs' complaint, state far more than Trivest just being "aware" of third-party misconduct, rather that it was involved in the misconduct. These allegations easily meet the notice-pleading standard for a civil conspiracy claim.

**G. Plaintiffs' Negligent Hiring/Training Claims are Sufficiently Pled.**

Trivest alleges that Plaintiffs have failed to establish an employment relationship between Trivest and the agents/employees who sold and installed the solar panel system to Plaintiffs. Again, a simple reading of Plaintiffs' complaint would foreclose this misconception. Plaintiffs have alleged that the agents/employees who sold and installed the solar panel system was an agent of Trivest and the other defendants. *See* Plaintiffs' Complaint at ¶ 16. The standard for a 12(b)(6) motion is whether Plaintiffs have pled facts sufficient to warrant liability for a particular cause of action. Here, Plaintiffs have alleged that Trivest negligently hired and trained employees to use hard-sale and deceptive trade practices that induced many customers, including Plaintiffs, into buying faulty solar

panel systems. While Trivest may deny these facts, the allegations meet the requirements of low-threshold requirements for notice pleading.

### H. Plaintiffs' Assert Allegations that Meet the Rule 9 Requirements for Pleading Fraudulent Misrepresentation.

In its seventh argument, Trivest alleges that Plaintiffs failed to plead their fraudulent misrepresentation claims with particularity. Fed. R. Civ. P. 9(b) requires a slightly different pleading standard for a claim of fraud or mistake. The Rule states that "…a party must state with particularity the circumstances constituting the fraud…" To satisfy this pleading requirement, a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kloss v. RBS Citizens, N.A.,* 996 F.Supp.2d 574, 585. Notably, while there is a slightly different pleadings standard for a claim of fraud, a court is still required to view the complaint in the light most favorable to the plaintiff and resolve every doubt in the plaintiff's favor. Fakorede, P.C., 2017 WL 4217230, *1.

Plaintiffs' complaint sufficiently meets the requirements set forth in Fed. R. Civ. P. 9. Specifically, Plaintiffs allege that Trivest and the other named defendants worked together to design and publish false and misleading claims about their solar systems. *See* Plaintiffs' Complaint at ¶ 13-14. These false claims ranged from the quality and efficiency of the solar system to the representations that the system would be maintained and repaired after installation. *Id.* Plaintiffs relied on these statements in scheduling and agreeing to purchase the solar panel system. *Id.* at ¶ 15.

Moreover, Plaintiffs' complaint alleges that Trivest, through its sales agent, made numerous false statements to Plaintiffs in an attempt to facilitate their purchase of a solar panel system. These false statements included, among other things, that Plaintiffs would receive a federal tax credit that would cover most if not all of the cost associated with the solar panel system, and that

Plaintiffs would have their energy bills essentially eliminated. *Id.* at ¶ 17, 19 and 24. Thus, contrary to Trivest's claims, Plaintiffs painstakingly detail the false representations that Trivest and its agents made to Plaintiffs.

### I. The First to File Rule is Applicable Here as the Cited Michigan Case Concerns Substantially Different Claims and Parties from the Consolidated Cases.

The first-to-file rule provides that a district court ***may*** stay the litigation when another party has filed first in another forum and there is "substantial similarity" in the parties and issues presented in the two cases. *Peters v. Inmate Servs. Corp.*, No. 1:17-CV-1660, 2018 WL 9869732, at *2 (N.D. Ohio Jan. 11, 2018). Neither requirement is met in this case. First, the Michigan case concerns three causes of action: (1) RICO; (2) Conspiracy to Commit Rico; and (3) Violations of the Michigan Consumer Sales Practices Act. Notably, none of these causes of action pertain to the causes of action that Plaintiffs have asserted in this case. Second, while the Michigan case involves Trivest and Defendant Jayson Waller, it does not include the financial institutions that Plaintiffs have named in this case. Moreover, the Michigan case concerns a class action that has not been certified, while this case do not request class certification. Thus, again, the first-to-file rule is inapplicable.

### IV. <u>CONCLUSION</u>

Trivest's motion is filled with factual contentions that are not appropriate for a motion to dismiss. Plaintiffs have sufficiently detailed how involved Trivest was heavily involved in the daily operation of PHS, and how its own conduct— and the conduct of its agents—make it liable under many of the causes of action asserted in the complaint. For the reasons stated above, this Court should deny Trivest's Motion to Dismiss.

Respectfully submitted,

*/s/ Stacie L. Roth*
Stacie L. Roth (0071230)
Richard D. Reinbold (0024152)
Andrew R. Burton (0100996)
**SCHULMAN, ROTH & ASSOC. CO., LPA.**
The Carnegie Building
236 3rd Street SW
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyoutside.com
rdreinbold@yahoo.com
aburton@lawyersonyourside.com

And

*/s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
236 3rd Street SW
Canton, Ohio 44702
330-497-8614
330-456-3641 (FAX)
Btscholl740@@yahoo.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 11, 2023, a true and accurate copy of the foregoing was filed on the Court's ECF system. Notice of this filing will be delivered to counsel of record by the Court's ECF system. Copies of the filing are available from the Court's system.

*/s/ Stacie L. Roth*
Counsel for Plaintiffs