IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY AND REBEKAH BOWE,** | :: | CASE NO.: 2:22-CV-04266 |
| Plaintiffs, | :: | |
| | :: | CHIEF JUDGE ALGENON L. MARBLEY |
| - vs - | :: | |
| | :: | |
| **SUNLIGHT FINANCIAL, LLC, et al.,** | :: | |
| | :: | |
| Defendants. | :: | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT JAYSON WALLER'S MOTION TO DISMISS**

Plaintiffs[1] submit this Memorandum in Opposition to Jayson Waller's[2] Motion to Dismiss.

**I.  INTRODUCTION**

Jayson Waller has been investigated by numerous states' attorney generals for pushing fraudulent and deceptive sales tactics onto unwitting customers. Plaintiffs' Complaint[3] details how Pink Energy[4] was just another front for Mr. Waller to deploy these tactics—this time to knowingly sell defective solar panels across the country. Plaintiffs' Complaint demonstrates how Mr. Waller was intimately involved in designing, training, and pushing his employees to use these high-pressure and deceptive sales tactics to defraud customers, including Plaintiffs. Mr. Waller should be held

---

[1] "Plaintiffs" refers to each of the Plaintiffs in the above-captioned case.

[2] "Jayson Waller" or "Mr. Waller" refers to Defendant, Jayson Waller

[3] "Complaint" refers to the Complaint that was filed by Plaintiffs in the above-captioned case.

[4] "Pink Energy" refers to Power Home Solar, LLC., which commonly did business as Pink Energy.

1

accountable for his conduct, and Plaintiffs' Complaint, along with dozens of other customer complaints, sufficiently seeks to do so.

## II. FACTUAL ALLEGATIONS

### A. Mr. Waller Engaged in Designing, Teaching, and Pushing High Pressure and Fraudulent Sales Tactics at Pink Energy to Defraud Customers, Including Plaintiffs.

Plaintiffs allege that Mr. Waller was intimately involved in the day-to-day operations of his business, Pink Energy. *See* Plaintiffs' Complaint at ¶ 25. In fact, Mr. Waller admitted that he "did everything" at Pink Energy, which included developing and teaching deceptive and fraudulent sales techniques to the company's salesmen. *Id.* at ¶ 25-30.

Part of Mr. Waller's sales training was to teach and encourage sales representatives to "engage in pressured hard-sell tactics, which included, but were not limited to, misleading customers as to the efficiency and efficacy of the solar panels they sold, manipulating customers' concerns with what was referred to as 'pain points,' misrepresenting the Federal Solar Tax Credit as a tax rebate, and making false threats regarding availability of the Federal Tax Credit in an attempt to make customers quickly sign a contract that they had no opportunity or ability to read." *Id.* at ¶ 39-47, 48. Mr. Waller also taught salesmen deceptive tactics such as: (1) using an electronic device that only they could control for signing agreements; (2) not providing written contracts to customers; (3) not allowing customers to read the contract free of pressure; (4) providing inaccurate and false information regarding sales documents; (5) misrepresenting a Federal tax credit as a rebate; (6) mischaracterizing and exaggerating the capabilities of their systems; and (7) price gouging customers. These were just some of the sales tactics that Plaintiffs experienced from a salesman that Mr. Waller taught and encouraged. *Id.* at ¶ 47-54. Not only does Plaintiffs' Complaint allege that Mr. Waller

designed and taught these fraudulent tactics, but it also alleges that Mr. Waller regularly reinforced the tactics at sales meetings and personally used them on customers across the country. *Id.* at ¶ 25-30.

This is not Mr. Waller's first time being accused of perpetuating fraudulent sales tactics. In fact, as alleged, Mr. Waller was involved in several state enforcement actions, including one involving his prior company, ISI Alarms—a company that abruptly closed its doors after the North Carolina Attorney General commenced an action alleging consumer fraud. *Id.* at ¶ 32-37. A fraud for which Mr. Waller was personally fined $136,000.00. *Id.* at ¶ 37.

Moreover, Plaintiffs alleged that Mr. Waller was an active participant in and orchestrated a conspiracy with several loan institutions, including Cross River/Sunlight[5]. Specifically, Plaintiffs' Complaint alleges that the named defendants knowingly worked together to charge and finance solar panels that were nearly double the average consumer price for similar units and did not work. *See* Plaintiffs' Complaint at ¶ 189-199.

## III. LAW AND ANALYSIS

In the matter at bar, Plaintiffs have pled several causes of action against Mr. Waller, including: (1) fraudulent inducement, (2) conspiracy to defraud, (3) negligence hiring, (4) negligence, and (5) a declaratory judgment to disregard Pink Energy's corporate form (i.e., piercing the corporate veil). These causes of action are governed by different pleading standards. Specifically, Plaintiffs' fraud claims are governed by Fed. R. Civ. P. 9(b), while their other claims are governed by Fed. R. Civ. P. 8. Plaintiffs address each in turn below.

> **B. Plaintiffs Have Sufficiently Pled Their Causes of Action for Negligent Training, Negligence, and Conspiracy against Mr. Waller Pursuant to Fed. R. Civ. P. 8 and 12.**

---

[5] "Cross River/Sunlight" collectively refer to Defendants, Cross River Bank and Sunlight Financial, LLC.

Rule 8(a)(2) of the Federal Rules of Civil Procedure is a liberal pleading standard that only requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609. "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Novo Nordisk A/S v. Caraco Pharmaceutical Laboratories, Ltd.*, 450 F.Supp.2d 757, 761 (citing: *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Because of this standard, "courts have held that a motion to dismiss…for failure to state a claim is viewed with disfavor and is rarely granted." *Antioch Litigation Tr. v. McDermott Will & Emery LLP*, 738 F.Supp.2d 758, 764 (citing *Nuchols v. Berrong*, 141 Fed.Appx. 451, 453 (6th Cir.2005)); see also, *Figgie v. Figgie*, 8th Dist. Cuyahoga No. 109829, 2021-Ohio-1195, ¶ 21 (holding: "a dismissal under Civ.R. 12(B)(6) is reserved for the rare case that cannot possibly succeed").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff does not have to "show" anything; he need only allege sufficient facts which could entitle him to relief. *Antioch Litigation Tr.* at 765 (citing: *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir.2002)); see also, *Figgie*, at ¶ 21 ("If there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss."). In determining whether a plaintiff has alleged sufficient facts under a motion to dismiss analysis, a court must view the complaint in the light most favorable to the plaintiff and resolve every doubt in the plaintiff's favor. *Fakorede v. Mid-South Heart Center, P.C.,* 2017 WL 4217230, *1 (6th Cir. 2017) ("We construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true."). As such, mere factual disputes are not enough to warrant dismissal under Fed. R. Civ. P. 12(b)(6). *Id.*

4

Plaintiffs have alleged sufficient facts to demonstrate each cause of action in their Complaint against Mr. Waller. As for their negligent hiring claim, Plaintiffs have alleged that Mr. Waller knowingly designed and then taught fraudulent and deceptive sales tactics to Pink Energy employees to secure sales on a solar system he knew either did not work or failed to achieve the results that were advertised and promised to consumers, including Plaintiffs. *See* Plaintiffs' Complaint at ¶ 156-162. These tactics, as mentioned above, included, but were not limited to, promising false tax credits and large energy savings, and creating a false sense of urgency in consumers to complete the sale. *Id.* at ¶ 47-54. The sales tactics that Mr. Waller taught and implemented at his company were then used by Pink Energy salesmen to mislead and induce numerous consumers into purchasing defective solar panels, including Plaintiffs. *Id.*

As for Plaintiffs' conspiracy claim, they alleged Mr. Waller was an active participant in a conspiracy with several loan institutions, including Cross River/Sunlight, to sell severely overpriced solar panels that the conspirators knew did not work or failed to achieve the results that were advertised and promised to customers including Plaintiffs. *Id.* at ¶ 188-201. The Complaint alleges that the conspirators worked together and used trained salesmen who wrongfully pressured and misled consumers, including Plaintiffs, into seeking financing only from certain loan companies like Cross River/Sunlight—a company that cooperated with Mr. Waller and Pink Energy in perpetrating their scheme to sell faulty solar systems. *Id.*

Plaintiffs' negligence claim provides that Mr. Waller and his company owed consumers a duty to use reasonable care when selling and monitoring their solar system products. *See* Plaintiffs' Complaint at ¶ 207. However, based on the sales strategy that Mr. Waller designed and implemented at Pink Energy, company salesmen provided consumers with false information relating to the solar panel products, including the amount of energy the system would create and how much

5

their electric bill would be reduced by using the solar panels—statements which at a minimum were negligent to make. *Id.* at ¶ 207-210. Mr. Waller's sales strategy also incorrectly represented that Pink Energy would be able to cure defects that might arise in the solar systems and that the company would be able to maintain the solar system—statements that, again, were false and negligent to make. *Id.* The Complaint alleges that this false and incorrect information was knowingly or negligently supplied to, at the direction of Mr. Waller, the Plaintiffs to induce them into signing a sales and loan agreements. *Id.* at ¶ 209.

Waller's motion to dismiss simply ignores the allegations in Plaintiffs' Complaint and assert factual contentions outside of the pleadings. Mr. Waller's factual contentions should be disregarded. The above-referenced causes of action are sufficiently pled in Plaintiffs' Complaint as they each detail the factual allegations necessary to establish such claims against Waller.

### C. Plaintiffs Have Sufficiently Pled Their Fraud Claim Against Mr. Waller Pursuant to Fed. R. Civ. P. 9(b).

Fed. R. Civ. P. 9(b) requires a slightly different pleading standard for a claim of fraud or mistake. The Rule states that "…a party must state with particularity the circumstances constituting the fraud…" To satisfy this pleading requirement, a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 585. Notably, while there is a slightly different pleadings standard for a claim of fraud, a court is still required to view the complaint in the light most favorable to the plaintiff and resolve every doubt in the plaintiff's favor. *Fakorede*, P.C., 2017 WL 4217230, *1.

Plaintiffs' Complaint meets the Rule 9 standard with regard to its fraud claim against Mr. Waller. The Complaint details that Mr. Waller designed a sales strategy and pitch – just as he did at his previous companies – that relied on making materially false promises to consumers in order to

6

make a sale. *See* Plaintiffs' Complaint at ¶ 96-101. While highlighted above, these materially false promises that Mr. Waller instructed his salesmen to make included the promises of tax incentives and dramatic energy cost reductions if consumers bought the solar system. *Id.* at ¶ 26-30 and 47-54. As indicated, these promises, and others like them, were false as the true extent of tax incentives was not disclosed, and the solar systems were known not to work or not work in the manner promised. *Id.* These false statements were provided to Plaintiffs to induce them into buying a solar panel system that did not work or did not work in the manner promised. *Id.* at ¶ 95-97. As a result, and on the reliance of these false statements/promises, Plaintiffs entered into a sales and loan agreement with Pink Energy and Cross River/Sunlight. *Id.* at 104-105.

In addition to identifying the false statements of fact, Plaintiffs' Complaint alleges that Mr. Waller designed and taught the fraudulent sales strategies that were employed by the sales agent that visited Plaintiffs' home. *Id.* at ¶ 25-30. While Mr. Waller did not directly make these statements to Plaintiffs, his conduct and use of sales agents to perpetrate his misconduct on a large scale do not permit him to avoid liability. *See* e.g., *Rilting Music Inc. v. Speakeasy Enterprises, Inc*., 706 F. Supp. 550, 554 (S.D. Ohio 1988). Therefore, the pleading requirements for a fraud claim have been met, and any factual contradictions raised by Mr. Waller should be ignored.

### D. Plaintiffs' Complaint Alleges Facts that Would Permit Personal Liability Against Mr. Waller.

In Ohio, if company officers take part in the commission of the act, or if they specifically directed the particular act to be done, or participated or cooperated therein, they can be personally liable for the actions of the corporation. *In re Fox*, 370 B.R. 104 (B.A.P. 6th Cir. 2007); and *In re Wentland*, 410 B.R. 585 (Bankr. N.D. Ohio 2009). An officer can also be liable for a tort committed by the corporation under his control or with his participation. *Onyx Environmental Services, LLC v. Maison*, 407 F. Supp. 2d 874 (N.D. Ohio 2005); *In re Fox*, 370 B.R. 104, 113 (B.A.P.

7

6th Cir. 2007). Tacit knowledge and approval alone are enough to create a jury question as to an officer's personal liability for a tort committed by a corporation. *Onyx Environmental Services, LLC, 407 F. Supp. 2d 874.* In essence, a corporate officer cannot escape liability simply because he had various employees execute his fraudulent scheme. *In re Fox,* at 113.

When an officer has participated indirectly in the tort or has participated in any benefits which may have resulted from the tort, he may be held personally liable. *Rilting Music Inc. 706 F. Supp. 550* at 554 . A corporate officer may also be held personally liable for tortious acts he or she has committed, and, under such circumstances, a plaintiff need not pierce the corporate veil to hold individuals liable who have personally committed such acts. *Mulch Mfg., Inc. v. Advanced Polymer Solutions, LLC*, 947 F. Supp. 2d 841 (S.D. Ohio 2013); *Roberts v. RMB Ents*., Inc., 197 Ohio App. 3d 435, 2011-Ohio-6223, 967 N.E.2d 1263 (12th Dist. Butler County 2011), *appeal not allowed*, 131 Ohio St. 3d 1499, 2012-Ohio-1501, 964 N.E.2d 440 (2012).

The facts and allegations above demonstrate that Waller directly participated in teaching and designing the tactics that were used to defraud Pink Energy's customers, including Plaintiffs. *See* Plaintiffs' Complaint at ¶ 25-30. Mr. Waller even encouraged his salespeople to use his fraudulent sale tactics to close deals, including Plaintiffs' solar deal. *Id*. The facts and allegations also demonstrate that, at a minimum, Mr. Waller was heavily involved in his business and knew that his employees were using fraudulent and wrongful sales techniques to convince customers, including Plaintiffs, to purchase solar panel systems that did not work as promised. *Id.* at ¶ 95-97, and 99-101. Since Mr. Waller was actively engaged and participated in Pink Energy's wrongful conduct, he should be held personally liable.

Additionally, Plaintiffs have alleged sufficient facts which would warrant a piercing of the corporate veil and impose liability on Mr. Waller for Plaintiffs' claims against Pink Energy.

Specifically, a court may disregard the corporate form and hold a company owner liable for a company's conduct when: (1) the defendant had control over the corporation such that the corporation had no separate mind, will, or existence of its own; (2) the defendant used the corporation to commit fraud or an illegal act; and (3) injury or unjust loss would result to the plaintiff if the corporate form is not disregarded. *Belvedere Condominium Unit Owners Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289, 617 N.E.2d 1075 (1993).

In this matter, Plaintiffs have alleged, based on several interviews and admissions from Mr. Waller, that he had complete control over Pink Energy. Mr. Waller admitted that he did everything in the company and was completely hands-on. *See* Plaintiffs' Complaint at ¶ 25-30. According to Mr. Waller, he could do any job at that company because he was so deeply involved in running it. *Id.* Additionally, as this Court is aware, this matter is rapidly developing—especially now with Pink Energy having filed for bankruptcy. As part of those bankruptcy proceedings, Mr. Waller was identified as having taken millions of dollars out of the company just before and after this lawsuit was filed. The money went almost entirely to himself, his wife, his family members, and his friends, who allegedly had management roles in Pink Energy. *See* Mr. Waller's November 3, 2022, Bankruptcy Declaration in the pending North Carolina Bankruptcy Court Case No. 22-50228. Moreover, Plaintiffs have alleged that Mr. Waller used his role in the company to facilitate a fraud by selling hundreds of solar systems, that either did not work or did not work as promised, through fraudulent and deceptive sales practices—a business strategy that Mr. Waller has repeatedly used in the past, as indicated by numerous state investigations against him and his prior companies for the same type of conduct that Plaintiffs have alleged in their Complaint. *See* Plaintiffs' Complaint at ¶ 31-38. It is also noteworthy that Mr. Waller seems to engage in a common practice of closing his businesses and filing for bankruptcy each time his company is caught engaging in fraudulent practices

9

– a tactic that makes it increasingly difficult for defrauded customers to recoup their money. *Id.* at ¶ 38.

  **E. Mr. Waller's Blanketed Assertion that this Court Should Simply Disregard any Allegation Because it Contains the Language "Upon Information and Belief" Is Not Supported by Established Law.**

Mr. Waller asserts to this Court that "allegations made merely on 'information and belief' cannot form the basis of a complaint." *See* Mr. Waller's Motion to Dismiss at Pages 5-6. In making this contention, Mr. Waller cites *Hill v. Ohio State Univ. T & L*, which concerns a pro-se plaintiff that admitted he did not plead facts in his case and instead attempted to assert those missing facts in his memorandum in opposition to a motion to dismiss. No. 2:12-cv-984, 2013 WL 2295957 (S.D. Ohio May 24, 2013). This is not the case in the present matter, where, as detailed above, Plaintiffs have painstakingly detailed the fraudulent, negligent, and otherwise wrongful conduct that Mr. Waller engaged in while at the head of Pink Energy.

Moreover, Ohio and Federal law do not provide that any allegation in a complaint, based on information and belief, should be simply disregarded. *See, Antioch Litigation Tr.,* 738 F.Supp.2d 758, 765 ("…qualifying words such as "upon information and belief" and "appear" are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts"); *Oatly AB v. D's Nats. LLC,* S.D.Ohio No. 1:17-CV-840, 2018 WL 3496386, *4, report and recommendation adopted, S.D.Ohio No. 1:17CV8402018 WL 4625553 (a party "may plead fraud based 'upon information and belief'"); *Gamrat v. Allard,* 320 F.Supp.3d 927, 941 ("Gamrat's "upon information and belief" allegation is not per se improper under *Twombly*"); *Novo Nordisk A/S,* 450 F.Supp.2d 757, 761 (holding that a plaintiff properly pled facts sufficient to justify piercing the corporate veil even if they were pled on "information and belief"); and *Starkey v. JPMorgan Chase Bank, NA,* 573 Fed.Appx. 444, 447 (holding that a "claim based on fraud can be pled on information and belief where

10

a plaintiff lacks personal knowledge of a fact but have sufficient data to justify interposing an allegation on the subject or be required to rely on information furnished by others").

While Plaintiffs believe that they have asserted allegations "upon information and belief" that are sufficiently based on the facts as presently known, Plaintiffs assert that information concerning the true extent to which Mr. Waller was involved in running Pink Energy and developing the deceptive trade practices at issue are within Pink Energy and Mr. Waller's control. It is not public information as to how Pink Energy was run, what control Mr. Waller had over pink energy (other than what he stated in interviews, in writing, and via his conduct in taking large sums of money out of Pink Energy shortly before or after the company filed for bankruptcy), or the extent to which Mr. Waller trained his sales agents, including the sales agent at issue in this case. However, based on the number of cases being filed against Pink Energy and the common thread in each case concerning the fraudulent practices employed by various sales agents, it is certainly probable, after conducting discovery, to find Mr. Waller was at the forefront of all deceptive and fraudulent conduct at issue in this matter.

### IV.   CONCLUSION

For the reasons stated above, Plaintiffs assert that they have sufficiently pled their causes of action against Mr. Waller and have sufficiently pled facts to justify this Court disregarding Pink Energy's Corporate Form. Therefore, Plaintiffs respectfully request this Court deny Mr. Waller's Motion to Dismiss.

Respectfully submitted,

*/s/ Stacie L. Roth*
Stacie L. Roth (0071230)
Richard D. Reinbold (0024152)
Andrew R. Burton (0100996)

11

**SCHULMAN, ROTH & ASSOC. CO., LPA.**
The Carnegie Building
236 3rd Street SW
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyoutside.com
rdreinbold@yahoo.com
aburton@lawyersonyourside.com

And

*/s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
236 3rd Street SW
Canton, Ohio 44702
330-497-8614
330-456-3641 (FAX)
Btscholl740@@yahoo.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I certify that on May 19, 2023, a true and accurate copy of the foregoing was filed on the Court's ECF system. Notice of this filing will be delivered to counsel of record by the Court's ECF system. Copies of the filing are available from the Court's system.

*/s/ Stacie L. Roth*
Counsel for Plaintiffs