# EXHIBIT

# B

DocuSign Envelope ID: 5095B6DF-7A83-4FC2-AB12-217919E35B03

THIS IS A COPY
This is a copy. The authoritative Copy held
by the designated custodian

# SUNLIGHT FINANCIAL

## SUMMARY OF KEY LOAN TERMS

Hello Gregory Bowe,

We are excited to partner with Power Home Solar to help you go solar! We sincerely appreciate and support your commitment to energy and financial independence.

Our goal is to provide you financing that is simple, affordable, and easy to understand. To this end, we have provided the key details and terms of your solar financing below. We'd also like to introduce our lending partner, Cross River Bank, a New Jersey state bank ("Lender") that is a leader in providing financing for innovative, environmentally-friendly products (such as solar systems). Once Lender approves your credit and the solar system is installed, Lender will advance the funds to pay for the solar system, extending you credit under a solar loan.  Lender will service your loan and will contact you directly with payment details after installation.

**What Happens Next:**

- Once you sign the Solar Energy System Loan Agreement and Promissory Note ("Loan Agreement"), a copy will be available through DocuSign and emailed to you.
- Due to installation timelines, it may take up to 180 days before your loan is set up.
- Lender will not advance funds until after installation.

**Payment Information:**

- The interest rate on your loan is based on your selected payment method.  A 0.50% discount is offered if you pay by ACH. You may select this option up to final installation of the solar system and prior to loan funding by inserting your ACH information on the Payment Election Form provided or by contacting Sunlight at (888) 850-3359 before your system is fully installed.  If you change your payment method any time after your system is installed, you may be subject to the corresponding higher or lower interest rate, as determined by the Lender.

| | Loan Amount | Term | APR | Monthly Payment | | |
|---|---|---|---|---|---|---|
| | | | | First 17 Payments | Payment 18+ with Voluntary Payment* | Payment 18+ without Voluntary Payment** |
| **Non-ACH (Standard)** | $40,000.00 | 300 | 3.49% | $151.47 | $151.47 | $205.58 |
| **ACH (Reduced)** | $40,000.00 | 300 | 2.99% | $143.08 | $143.08 | $194.47 |

*Monthly payment for payments 18 and beyond when a voluntary payment **IS** applied to your loan.
** Monthly payment for payment 18 and beyond when a voluntary payment **IS NOT** applied to your loan.
The last payment amount may differ from the remaining payment amounts.

Initials _GB_

- Your first monthly payment is due approximately 60 days after the system is installed.  You may be required to make payments before your system begins generating electricity. The first payment date on your Loan Agreement is an estimate only.
- You may prepay the unpaid balance in full or in part at any time without penalty.
- Interest accrues on the unpaid balance of the amount financed on a daily basis from the date your system is installed.

**Important Reminders:**

- Your obligation to repay this loan is independent of system performance.
- You are providing a security interest in the solar equipment related to this transaction.
- We may disable the system in the event of default.

Initials _GB_

- Please consult your tax advisor regarding your eligibility for the Federal Tax Credit.  Your loan and your requirement to make payments is not contingent on the availability or your receipt of a tax credit or other benefit.
- To protect your solar system from an unforeseen disaster, you should reach out to your insurance provider and update your personal property coverage to include the solar system.

DocuSign Envelope ID: 50B5B6DF-7A82-4FC2-AB12-212919E35B03
THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

This information can also be found in your Loan Agreement, included within this package.

If you have any questions or concerns, please call us at (888) 850-3359 or email us at support@sunlightfinancial.com.





THIS IS A COPY
Copy Note: The Authoritative Copy held by the designated custodian

### Sample Amortization Schedule for 25-Year Solar Loan with a 2.99% APR

**This is an example and may not reflect the actual amount or terms of your loan. Your results may vary based on loan amount, annual percentage rate (APR), payment amounts, and the timing of your payments.**

- The tables below illustrate the schedule of payments for the first two years of a $40,000 solar system where payment is deferred for the first 60 days after installation. The table on top shows the payment schedule if voluntary payment defined above is made **by the 17th scheduled payment**. In this case, the monthly payment **should** remain the same for the entire term of the loan. The 2nd table illustrates the payment schedule if **no** voluntary payment is made **by the 17th scheduled payment.** In this case, the monthly payment amount increases **with the 18th scheduled payment** and remains at this higher amount through the remaining term of the loan.
- **Please consult your tax advisor regarding the Federal Tax Credit. Your loan and your requirement to make payments is not contingent on the availability or your receipt of a tax credit or other benefit.**

**Voluntary Payment**

| Payment Number | Principal Balance | Accrued Interest | Accrued & Unpaid Interest | Monthly Payment | Amount Paid to Principal | Amount Paid to Interest | Unpaid Interest |
|---|---|---|---|---|---|---|---|
| 0 | $40,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 0 | $40,000.00 | $98.30 | $98.30 | $0.00 | $0.00 | $0.00 | ($98.30) |
| 1 | $40,000.00 | $101.58 | $199.88 | $143.08 | $0.00 | $143.08 | ($56.80) |
| 2 | $40,000.00 | $98.30 | $155.10 | $143.08 | $0.00 | $143.08 | ($12.02) |
| 3 | $40,000.00 | $101.58 | $113.60 | $143.08 | $29.48 | $113.60 | $0.00 |
| 4 | $39,970.52 | $101.50 | $101.50 | $143.08 | $41.58 | $101.50 | $0.00 |
| 5 | $39,928.94 | $98.13 | $98.13 | $143.08 | $44.95 | $98.13 | $0.00 |
| 6 | $39,883.99 | $101.28 | $101.28 | $143.08 | $41.80 | $101.28 | $0.00 |
| 7 | $39,842.19 | $97.91 | $97.91 | $143.08 | $45.17 | $97.91 | $0.00 |
| 8 | $39,797.03 | $101.06 | $101.06 | $143.08 | $42.02 | $101.06 | $0.00 |
| 9 | $39,755.01 | $100.96 | $100.96 | $143.08 | $42.12 | $100.96 | $0.00 |
| 10 | $39,712.88 | $91.09 | $91.09 | $143.08 | $51.99 | $91.09 | $0.00 |
| 11 | $39,660.89 | $100.72 | $100.72 | $143.08 | $42.36 | $100.72 | $0.00 |
| 12 | $39,618.53 | $97.36 | $97.36 | $143.08 | $45.72 | $97.36 | $0.00 |
| 13 | $39,572.81 | $100.49 | $100.49 | $143.08 | $42.59 | $100.49 | $0.00 |
| 14 | $39,530.23 | $97.15 | $97.15 | $143.08 | $45.93 | $97.15 | $0.00 |
| 15 | $39,484.29 | $100.27 | $100.27 | $143.08 | $42.81 | $100.27 | $0.00 |
| 16 | $39,441.48 | $100.16 | $100.16 | $143.08 | $42.92 | $100.16 | $0.00 |
| 26% Prepayment | $39,398.56 | $96.82 | $96.82 | $10,400.00 | $10,303.18 | $96.82 | $0.00 |
| 17 | $29,095.38 | $0.00 | $0.00 | $143.08 | $143.08 | $0.00 | $0.00 |
| 18 | $28,952.31 | $73.52 | $73.52 | $143.08 | $69.56 | $73.52 | $0.00 |
| 19 | $28,882.75 | $70.98 | $70.98 | $143.08 | $72.10 | $70.98 | $0.00 |
| 20 | $28,810.65 | $73.16 | $73.16 | $143.08 | $69.92 | $73.16 | $0.00 |
| 21 | $28,740.73 | $72.99 | $72.99 | $143.08 | $70.09 | $72.99 | $0.00 |
| 22 | $28,670.64 | $65.76 | $65.76 | $143.08 | $77.32 | $65.76 | $0.00 |

**No Voluntary Payment**

| Payment Number | Principal Balance | Accrued Interest | Accrued & Unpaid Interest | Monthly Payment | Amount Paid to Principal | Amount Paid to Interest | Unpaid Interest |
|---|---|---|---|---|---|---|---|
| 0 | $40,000.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 0 | $40,000.00 | $98.30 | $98.30 | $0.00 | $0.00 | $0.00 | ($98.30) |
| 1 | $40,000.00 | $101.58 | $199.88 | $143.08 | $0.00 | $143.08 | ($56.80) |
| 2 | $40,000.00 | $98.30 | $155.10 | $143.08 | $0.00 | $143.08 | ($12.02) |
| 3 | $40,000.00 | $101.58 | $113.60 | $143.08 | $29.48 | $113.60 | $0.00 |
| 4 | $39,970.52 | $101.50 | $101.50 | $143.08 | $41.58 | $101.50 | $0.00 |
| 5 | $39,928.94 | $98.13 | $98.13 | $143.08 | $44.95 | $98.13 | $0.00 |
| 6 | $39,883.99 | $101.28 | $101.28 | $143.08 | $41.80 | $101.28 | $0.00 |
| 7 | $39,842.19 | $97.91 | $97.91 | $143.08 | $45.17 | $97.91 | $0.00 |
| 8 | $39,797.03 | $101.06 | $101.06 | $143.08 | $42.02 | $101.06 | $0.00 |
| 9 | $39,755.01 | $100.96 | $100.96 | $143.08 | $42.12 | $100.96 | $0.00 |
| 10 | $39,712.88 | $91.09 | $91.09 | $143.08 | $51.99 | $91.09 | $0.00 |
| 11 | $39,660.89 | $100.72 | $100.72 | $143.08 | $42.36 | $100.72 | $0.00 |
| 12 | $39,618.53 | $97.36 | $97.36 | $143.08 | $45.72 | $97.36 | $0.00 |
| 13 | $39,572.81 | $100.49 | $100.49 | $143.08 | $42.59 | $100.49 | $0.00 |
| 14 | $39,530.23 | $97.15 | $97.15 | $143.08 | $45.93 | $97.15 | $0.00 |
| 15 | $39,484.29 | $100.27 | $100.27 | $143.08 | $42.81 | $100.27 | $0.00 |
| 16 | $39,441.48 | $100.16 | $100.16 | $143.08 | $42.92 | $100.16 | $0.00 |
| 17 | $39,398.56 | $96.82 | $96.82 | $143.08 | $46.26 | $96.82 | $0.00 |
| 18 | $39,352.31 | $99.93 | $99.93 | $194.47 | $94.54 | $99.93 | $0.00 |
| 19 | $39,257.77 | $96.48 | $96.48 | $194.47 | $97.99 | $96.48 | $0.00 |
| 20 | $39,159.78 | $99.44 | $99.44 | $194.47 | $95.03 | $99.44 | $0.00 |
| 21 | $39,064.75 | $99.20 | $99.20 | $194.47 | $95.27 | $99.20 | $0.00 |
| 22 | $38,969.48 | $89.38 | $89.38 | $194.47 | $105.09 | $89.38 | $0.00 |

COPY PREVIEW

DocuSign Envelope ID: 50B5B6DF-7A82-4EC2-AB12-212919E35B03

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

# PATRIOT ACT

# INFORMATION DISCLOSURE

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW
ACCOUNT —

To help the government fight the funding of terrorism and money laundering activities, federal law requires all
financial institutions to obtain, verify, and record information that identifies each person who opens an
account.

What this means for you: When you open an account, we will ask for your name, address, date of birth, and
other information that will allow us to identify you. We may also ask to see your driver's license or other
identifying documents.



COPY VIEW

DocuSign Envelope ID: 50B5B6DF-7A82-4EC2-AB12-21F919E35B03

THIS IS A COPY
This is copy of the Authoritative Copy held
by the designated custodian

| **FACTS** | **WHAT DOES CROSS RIVER BANK DO WITH YOUR PERSONAL INFORMATION?** Rev. 11/2018 |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>- Social Security number and Account balances<br>- Payment history and Transaction history<br>- Account transactions and Wire transfer instructions<br><br>When you are *no longer* our customer, we continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Cross River Bank chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Cross River Bank share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes--** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes--** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes--** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes--** information about your creditworthiness | No | We don't share |
| **For nonaffiliates to market to you** | No | We don't share |

| **Questions?** | Call toll-free 1-877-55CRB55 or go to www.crossriverbank.com |
|---|---|

cross river®

DocuSign Envelope ID: 50B5B6DF-7A83-4EC2-AB18-21E919E35B03

THIS IS A COPY
This is a copy is not the Authoritative Copy held
by the designated custodian

| What we do | |
|---|---|
| **How does Cross River Bank protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br>We also maintain other physical, electronic and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does Cross River Bank collect my personal information?** | We collect your personal information, for example, when you<br>- Open an account or Apply for a loan<br>- Make deposits or withdrawals from your account or Provide employment information<br>- Give us your contact information<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>- sharing for affiliates' everyday business purposes--information about your creditworthiness<br>- affiliates from using your information to market to you<br>- sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. See below for more on your rights under state law. |
| | |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>- *Cross River Bank does not share with our affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>- *Nonaffiliates we share with can include loan finance companies* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>- *Our joint marketing partner(s) include loan finance companies.* |

| Other important information |
|---|
| **For Alaska, Illinois, Maryland and North Dakota Customers**. We will not share personal information with nonaffiliates either for them to market to you or for joint marketing-without your authorization.<br>**For California Customers**. We will not share personal information with nonaffiliates either for them to market to you or for joint marketing-without your authorization. We will also limit our sharing of personal information about you with our affiliates to comply with all California privacy laws that apply to us.<br>**For Massachusetts, Mississippi and New Jersey Customers**. We will not share personal information from deposit or share relationships with nonaffiliates either for them to market to you or for joint marketing-without your authorization.<br>**For Vermont Customers**. We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. Additional information concerning our privacy policies can be found at www.crossriverbank.com or call 1-877-55CRB55. |

DocuSign Envelope ID: 50B5B6DF-7A83-4FC3-AB18-21F919E35B03

THIS IS A COPY
This is copy is not the Authoritative Copy held by the designated custodian

Rev. 01/2021

| FACTS | WHAT DOES SUNLIGHT FINANCIAL LLC DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br><br>- Social Security number and income<br>- Payment history and transaction history<br>- Credit history and credit scores |
| How? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Sunlight Financial chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Sunlight Financial share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes—** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes—** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes—** information about your transactions and experiences | No | We don't share |
| **For our affiliates' everyday business purposes—** information about your creditworthiness | No | We don't share |
| **For our affiliates to market to you** | No | We don't share |
| **For nonaffiliates to market to you** | Yes | Yes |

| To limit our sharing | - Call 888-850-3359—our menu will prompt you through your choice(s).<br><br>**Please note:**<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we may continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing. |
|---|---|
| Questions? | Call 888-850-3359 or go to www.sunlightfinancial.com. |



THIS IS A COPY<br>The original of this document is an Authoritative Copy held by the designated custodian

| Who we are | |
|---|---|
| Who is providing this notice? | **Sunlight Financial LLC** |

| What we do | |
|---|---|
| **How does Sunlight Financial LLC protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. We also maintain other physical, electronic, and procedural safeguards to protect this information and we limit access to information to those employees for whom access is appropriate. |
| **How does Sunlight Financial LLC collect my personal information?** | We collect your personal information, for example, when you<br>• Apply for a loan,<br>• Give us your income information,<br>• Provide account information,<br>• Pay your bills, or<br>• Give us your contact information.<br>We also collect your personal information from others, such as credit bureaus or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes—<br>• information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |
| **What happens when I limit sharing for an account I hold jointly with someone else?** | Your choices will apply to everyone on your account – unless you tell us otherwise. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Sunlight Financial has no affiliates.* |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *Nonaffiliates we share with may include mortgage companies, banks, credit unions and other finance companies.* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *Our joint marketing partners include mortgage companies, banks, credit unions and other finance companies.* |

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-347849535B09

THIS IS A COPY
This is a Copy of the Authoritative Copy held
by the designated custodian

**Other important information**

**California , North Dakota, and Vermont Residents:** We will not share your information with companies outside of Sunlight Financial LLC except for our everyday business purposes, which includes to service your account, or for marketing our products and services to you or with your consent.

**Vermont Residents only**: We will not disclose credit information about you within or outside Sunlight Financial LLC, except as required or permitted by law.

**Nevada Residents**: Notice provided pursuant to state law. To be placed on our internal Do Not Call List, call 888-850-3359. If you would like more information about telemarketing practices, you may contact us at Sunlight Financial LLC, 101 N. Tryon Street, Suite 1000, Charlotte, North Carolina 28246 or at support@sunlightfinancial.com. For more on this Nevada law, contact Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: 1-702-486-3132; e-mail: BCPINFO@ag.state.nv.us.

Telephone Communications: All telephone communications with us or our authorized agents may be monitored or recorded.

* Notice provided by: Sunlight Financial LLC.

THIS IS A COPY
This is a Copy View of the Authoritative Copy held by the designated custodian

# PAYMENT ELECTION

You must select one of the payment options below. Your choice is voluntary, and the extension of credit is not conditioned upon your election to make automatic payments.  You may change your selection at any time. If you change your selection, we may create a new Payment Election and Note for you to sign. If you select Option One-Payment by Preauthorized EFTs and provide the required information, you will be eligible for a reduced APR, as stated in your Loan Agreement and Promissory Note.

[   X   ]    **Option One—Payment by Preauthorized EFTs**: If this box is checked, you elect to make your Scheduled monthly payments by having us initiate preauthorized electronic fund transfers ("EFTs") from your designated deposit account (the "Account") when your monthly payments are due. **YOU MUST PROVIDE A VOIDED CHECK OR FILL OUT THE FIELDS BELOW IN ORDER TO IDENTIFY THE ACCOUNT**. We may treat any replacement or substitute deposit account of yours as the "Account." You promise us that you are authorized to make payments from the Account. In the event we make an error in processing an EFT, you authorize us to initiate an EFT to or from the Account to correct the error. You agree that we may resubmit up to two times any EFT that is dishonored. We are not responsible for bank charges you may incur due to dishonored EFTs. You may cancel your election to pay by EFTs under Option One at any time. To do so, you must notify us, by phone at (888) 850-3359 or in writing at

**Cross River Bank
c/o Sunlight Financial LLC
P.O. Box 843840
Dallas, TX 75284-3840**

at least three (3) business days before the scheduled date of the next payment you would like to make by some other method.



| Peoples Bank | 044202505 | 00002011023331 |
|---|---|---|
| Bank Name | Routing Number | Account Number |

[     ]    **Option Two—Payment by Alternative Method:** If this box is checked, you elect NOT to make your scheduled monthly payments by having us initiate preauthorized electronic fund transfers ("EFTs") from your designated deposit account. Each month, you must mail a check to us or arrange for payment to be made in some other manner acceptable to us. Terms used in this Payment Election and not otherwise defined are defined in the Long-Term Note. **BY SIGNING BELOW, YOU ELECT OPTION ONE OR OPTION TWO AS SET FORTH ABOVE**.

Borrower: _Gregory Bowe_
461B04C21C7B4E8...
DocuSigned by:

Co-Borrower: ----------------------

Signed Date: 4/23/2021  |  7:03 PM EDT
------------------------

Gregory Bowe
211 LOCUST ST, BELPRE, OH 45714

**IF YOU HAVE ELECTED OPTION ONE AND HAVE NOT FILLED OUT THE ABOVE ACCOUNT FIELDS, PLEASE PROVIDE A VOIDED CHECK TO IDENTIFY THE ACCOUNT**

THIS IS A COPY
This is a Copy View of the Authoritative Copy held by the designated custodian

# SOLAR ENERGY SYSTEM LONG-TERM
# LOAN AGREEMENT AND PROMISSORY NOTE
## NONNEGOTIABLE CONSUMER NOTE

Loan Number: QU-20210423-634021                    Date: 04/23/2021 | 4:42 PM EDT

| Gregory Bowe | 211 LOCUST ST, BELPRE, OH 45714 |
|---|---|
| Borrower: Name | Address |

| | |
|---|---|
| Co-Borrower: Name | Address |

**DEFINITIONS:** As used in this Long-Term Loan Agreement and Promissory Note ("Note"), "you" and "your" mean Borrower and any Co-Borrower. For purposes of the Note provisions under the caption "GRANT OF SECURITY INTEREST; MAINTENANCE OF PROPERTY AND SYSTEM; ACCESS" (except the first sentence) and "ARBITRATION PROVISION," "you" and "your" also include any grantor trust or limited liability company (either "Entity Owner") that owns the residence located at the Borrower address set forth above (the "Residence"). "We," "us" and "our" mean Cross River Bank, located at 400 Kelby Street, Ft. Lee, New Jersey 07024 ("Lender"), and any subsequent holder of this Note. "Contractor" means Power Home Solar. "Loan" means the loan evidenced by this Note.   You are purchasing one of the following: (1) a solar energy system, (2) a solar energy system including electricity storage equipment, or (3) electricity storage equipment (each of which are referred to as the "System"). "Installation" is complete and the System is "Installed" on the date the System is substantially completed.   The System does not need to be connected to a power grid or operating to be considered Installed for purposes of this Note.

## TRUTH IN LENDING ACT ("TILA") DISCLOSURES

| ANNUAL PERCENTAGE RATE ("APR") | FINANCE CHARGE (e) | Amount Financed (e) | Total of Payments (e) |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after you have made all scheduled payments |
| 3.49% | $20,549.69 | $40,000.00 | $60,549.69 |

**Payment Schedule (e):** This payment schedule reflects the APR disclosed above, which applies if you elect not to make automatic payments by preauthorized Electronic Funds Transfer/ACH payments ("ACH Payments"). Monthly payments are due commencing approximately two (2) months after the Installation date, as follows: 17 payments of $151.47, followed by 281 payments of $205.58 and a single payment of $206.72.*

**Late Fee:** If any part of a payment is more than ten days late, we will charge you a late fee equal to 5% of the scheduled payment or $25, whichever is greater.

**Security Interest:** You are giving us a security interest in the System, including any modifications, attachments, improvements, revisions and/or additions thereto (the "Equipment") and in your contractual and other rights, if any, regarding renewable energy credits and similar benefits.

**Prepayment:** If you pay this Loan early, you will not have to pay a penalty.

**Contract Reference:** See the remainder of this Note for any additional information about nonpayment, default, our right to accelerate maturity of this Note and prepayment rebates and penalties.

(e) means an estimate

Borrower:_____
*GB*

Co-Borrower:_____

DocuSign Envelope ID: E0D5B6DF-7A83-4FC2-AB13-317019535B03

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

**ACH Payment Disclosures (Reduced APR) (e):** If you choose to make automatic payments through ACH Payments and comply with all stated requirements on the Payment Election Form on or before the date the System is Installed, you will qualify for a reduced APR of **2.99%** (0.50% reduction) ("Reduced APR"), which results in a reduced finance charge of **$17,276.31**, and reduced total payments of **$57,276.31**. Your Amount Financed will remain **$40,000.00**.

**ACH Payment Schedule (Reduced APR) (e):** The following payment schedule reflects the Reduced APR of **2.99%**, which applies if you elect to make ACH Payments and comply with all requirements. Monthly payments are due commencing approximately two months after the Installation date, as follows: **17** payments of **$143.08**, followed by **281** payments of **$194.47** and a single payment of **$197.88**.*

* Both payment schedules assume no voluntary payments. If you make all payments on time and in full and also make a voluntary payment of $10,400.00 ("Voluntary Payment") on or before the scheduled date of your 17th payment, your subsequent scheduled monthly payments will be reduced to the approximate level of your prior monthly payments.

|  ITEMIZATION OF AMOUNT FINANCED | |
| --- | --- |
| Amount Financed/Gross Amount Due to Contractor for System | $40,000.00 |

Borrower:_____

Co-Borrower:_____

DocuSign Envelope ID: E0D5B6DE-7A82-4FC2-AB13-347919535B03

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

**AL RESIDENTS:** The Alabama license or privilege tax required by law in the amount of $60.00 has been paid or will be paid directly to the Department of Revenue. **The Alabama license or privilege tax will be paid only if the Residence is in Alabama.**

CT RESIDENTS: THIS INSTRUMENT IS BASED UPON A HOME SOLICITATION SALE, WHICH SALE IS SUBJECT TO THE PROVISIONS OF THE HOME SOLICITATION SALES ACT. THIS INSTRUMENT IS NOT NEGOTIABLE.

**FL RESIDENTS:** Florida documentary stamp tax required by law in the amount of $140.00 has been paid or will be paid directly to the Department of Revenue. Certificate of Registration No. 78-8017218158-2. **The Florida documentary stamp tax will be paid only if the Residence is in Florida.**

**IA RESIDENTS: THIS IS A CONSUMER CREDIT TRANSACTION.**

**IA RESIDENTS: NOTICE TO CONSUMER: 1. Do not sign this Note before you read it. 2. You are entitled to a copy of this Note. 3. You may prepay the unpaid balance at any time without penalty and may be entitled to receive a refund of unearned charges in accordance with law.**

**MD RESIDENTS:** The Maryland recordation tax required by law in the amount of  has been paid or will be paid directly to the applicable Maryland County office. **The Maryland recordation tax will be paid only if the Residence is in Maryland.**

**TN RESIDENTS:** Maximum principal indebtedness for Tennessee recording tax purposes is $43.70. **The Tennessee recordation tax will be paid only if the Residence is in Tennessee.**

THIS IS A COPY
This is a Copy view of the Authoritative Copy held by the designated custodian

COPY

BY SIGNING BELOW, YOU AGREE TO THE TERMS OF THIS NOTE, INCLUDING THE ADDITIONAL TERMS AND CONDITIONS BELOW AND THE ATTACHED ARBITRATION PROVISION. YOU AGREE BOTH INDIVIDUALLY AND FOR PURPOSES OF THE NOTE PROVISIONS UNDER THE CAPTION "GRANT OF SECURITY INTEREST; MAINTENANCE OF PROPERTY AND SYSTEM; ACCESS" (EXCEPT THE FIRST SENTENCE) AND "ARBITRATION PROVISION," AS TRUSTEE OR MEMBER OF ANY ENTITY OWNER. BY CONSIDERING YOUR APPLICATION FOR THE LOAN, WE AGREE TO THE TERMS OF THIS NOTE. YOU SPECIFICALLY AND SEPARATELY AGREE THAT WE MAY DIRECTLY OR REMOTELY DISABLE THE FUNCTIONING OF THE SYSTEM IF THERE IS A DEFAULT, AS DESCRIBED IN THE "ACCELERATION; DEFAULT REMEDIES" SECTION OF THE ADDITIONAL TERMS AND CONDITIONS. YOU ACKNOWLEDGE THAT, BEFORE SIGNING THIS NOTE, YOU RECEIVED A LEGIBLE, SIGNED, DATED AND COMPLETELY FILLED-IN COPY OF THIS NOTE (INCLUDING THE ATTACHMENTS).

RI RESIDENTS: Notice to Buyer: (1) Do not sign this agreement if any of the spaces intended for the agreed terms to the extent of then available information are left blank. (2) You are entitled to a copy of this agreement at the time you sign it. (3) You may at any time pay off the full, unpaid balance due under this agreement and in so doing you may be entitled to receive a partial rebate of the finance and insurance charges. (4) The seller has no right to unlawfully enter your premises or commit any breach of the peace to repossess goods purchased under this agreement. (5) You may cancel this agreement if it has not been signed at the main office or a branch office of the seller, provided you notify the seller at his or her main office or branch office shown in the agreement by registered or certified mail, that shall be posted not later than midnight of the third calendar day after the day on which the buyer signs the agreement, excluding Sunday and any holiday on which regular mail deliveries are not made. See the attached notice of cancellation form for an explanation of buyer's rights.

NOTICE TO WI RESIDENTS: (A) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (B) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (C) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (D) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

Borrower: *Gregory Bowe*
DocuSigned by:
461B04C21C7B4E8...

Gregory Bowe

Co-Borrower:

Date: 4/23/2021 | 7:03 PM EDT

YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

THE ARBITRATION PROVISION ATTACHED AS EXHIBIT A WILL HAVE A SUBSTANTIAL IMPACT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE BETWEEN YOU AND US OR BETWEEN YOU AND CONTRACTOR. FOR EXAMPLE, WE (OR CONTRACTOR) MAY REQUIRE YOU TO ARBITRATE ANY CLAIM YOU INITIATE. IF SO, YOU WILL NOT HAVE THE RIGHT TO A JURY TRIAL OR THE RIGHT TO PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION.

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

THIS IS A COPY
This is a Copy View of the Authoritative Copy held by the designated custodian

## ADDITIONAL TERMS AND CONDITIONS

**ADVANCES TO FINANCE SYSTEM INSTALLATION; FUNDING CONDITIONS:** You have entered into an agreement with Contractor (the "Contractor Agreement") for Contractor to sell the System to you and install it at the Residence, subject to your receipt of all necessary financing. We are prepared to provide the necessary financing under this Note. However, before we fund the Loan, the Contractor must provide us with a satisfactory document package that includes, among other documents, the Contractor Agreement your application for credit (the "Application"); and this Note. Our final review and funding are also subject to Contractor's receipt from you and third parties of any and all other amounts to which it is entitled under the Contractor Agreement. If the conditions to funding are not satisfied within 90 days from the date we approved your Application, we may deem our approval of the Application to have expired.

**INTEREST; PROMISE TO PAY:** If the System is Installed, you agree to pay the actual Amount Financed by us (equal to the amount owed by you to the Contractor and satisfied by the Loan), together with interest on the unpaid balance of the Amount Financed from time to time commencing on the date of the initial payment made by us to Contractor under this Note, which is typically the Installation date (the "Initial Disbursal Date"), and ending on the date of payment in full. Interest is charged at a Daily Rate of 0.0095616438% (which corresponds to an annual rate of 3.49%). The Daily Rate and APR in this section assume that you did not satisfy all requirements for the Reduced APR or chose not to pay by ACH Payments. The Amount Financed and your monthly payment amount are shown on the Payment Schedule included in the TILA Disclosures unless they are reduced based on preauthorized ACH Payments or the Site Audit (defined below). See the section of this Note captioned "POSSIBLE REPLACEMENT OR MODIFICATION OF THIS NOTE DUE TO SITE AUDIT." Payments will be due on the same day of each month, commencing approximately two months after the Installation date. However, if the first payment is due on the last day of a month, all payments will be due on the last day of each month. Also, payments otherwise due on a non-business day will be due on the next business day. On the date of your final required payment (the "Maturity Date"), any unpaid balance under this Note will be payable in full. The final required payment will likely vary somewhat from prior required payments (and the estimated amount in the TILA Disclosures) due to, among other things, any payments not made on the scheduled payment date, the differing lengths of months, and monthly anniversaries of the initial payment date that fall on days that are not business days.

**REDUCED APR FOR ACH PAYMENTS:** If you choose to make ACH Payments and comply with all stated requirements on the Payment Election Form before Installation, you will qualify for a Reduced APR of 2.99 % (equal to a 0.50% reduction from the APR stated in the TILA Disclosures above) for the term of this Loan. This corresponds to a reduced daily interest rate of 0.0081917808% and reduced total payments of $57,276.31. Your Amount Financed will remain $40,000.00 and the number of total payments will remain the same. The Reduced APR and corresponding payment schedule will only be effective if the Payment Election Form and required information are received at or before the time that the System is Installed. All other payment obligations will remain the same.

**PREPAYMENTS; POSSIBLE CHANGE IN PAYMENT SCHEDULE: You may prepay the unpaid Amount Financed in whole or in part at any time.** On the date of your 17th scheduled payment, we will change your subsequent payment schedule, if necessary, so that your remaining outstanding balance would be repaid in full over the remaining life of the Loan through substantially equal monthly payments, commencing on the scheduled date of your 18th payment. If you make all payments on time and in full and also make a Voluntary Payment of $10,400.00 on or before the scheduled date of your 17th payment, your subsequent scheduled monthly payments will be reduced to the approximate level of your prior monthly payments. Except as set forth above and unless we otherwise agree, a partial prepayment made after the 17th payment will not reduce subsequent monthly payments until the Loan is paid in full.

**PAYMENT APPLICATION:** We will apply payments (including any voluntary payments) first to outstanding charges, then to accrued but unpaid interest, then to the unpaid balance of the Amount Financed. Because interest accrues on the unpaid balance of the Amount Financed on a daily basis, extended first payment periods and payment deferrals will increase the amount of interest you owe. One or more payments made after any extended first payment or deferral period may only pay accrued interest. Such payments may be insufficient to reduce the Amount Financed.

**POSSIBLE REPLACEMENT OR MODIFICATION OF THIS NOTE DUE TO SITE AUDIT:** This Note may be executed prior to the time that Contractor has completed a full site audit of the Residence ("Site Audit"). The Site Audit may reveal that changes to the proposed System are necessary or desirable. These changes may increase or decrease the cost of the System. If the System cost is increased, you may elect to pay the cost difference to Contractor in cash and keep this Note in force. Alternatively, you may elect to cancel this Note by giving us written notice of cancellation. If you cancel this Note, you may apply to us for a larger loan. Subject to receipt of credit approval, you will be offered the opportunity to enter into a new loan agreement and promissory note to reflect the increased loan amounts. If the System cost is reduced, you may elect to cancel this Note by giving us written notice of cancellation and enter into new loan agreement and promissory note to reflect the decreased loan amount. If you and we enter into an updated note, the updated note (and not this Note) will govern.

**GRANT OF SECURITY INTEREST; MAINTENANCE OF PROPERTY AND SYSTEM; ACCESS:** You represent that you are an owner(s) of the Residence, or trustee(s) or member(s) with signing authority of an Entity Owner that is an owner of the

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

Residence. You hereby grant us a first priority purchase-money security interest in, and assign to us as collateral under this Note (the "Collateral"): (i) the Equipment; (ii) all agreements previously or subsequently entered into by you and all credits, benefits, emissions reductions, offsets, and allowances, howsoever entitled, whether currently identified or identified any time in the future, attributable to the generation from the Equipment, and its avoided emission of pollutants provided to you, regarding renewable energy credits, tradable generation rights, pollution/emission credits or other associated benefits; the sale of credits, credit certificates or similar items for greenhouse gas reduction, the generation of green power or renewable energy; or similar matters (collectively, "Environmental Incentives"); and (iii) all proceeds and revenues resulting from the foregoing. You will sign and deliver to us (and cause any Entity Owner to sign and deliver to us) any document that is or may be required to perfect our security interest in the Collateral. Except for Delaware, Illinois and Pennsylvania residents and except where prohibited by applicable law, you irrevocably appoint us as your attorney-in-fact to sign, file and/or record any such document on your behalf.

You understand and agree that we may make a fixture filing covering the Equipment. You further understand and agree that, at our election, we may enforce rights in the Equipment under the Uniform Commercial Code and/or under state real estate or mortgage law.

You agree to maintain the System in good operating condition and will not remove the System from the Residence without our prior written approval. In order to protect our interest in the Equipment, you agree that we shall have the right, but not the obligation, to monitor performance of the System, both directly and remotely, and to undertake servicing and maintenance of the System, directly or through third parties, including Contractor. You will allow us to remotely monitor System performance and we will have the right to use any monitoring information we obtain and to disclose such information to affiliated or unaffiliated third parties for any purpose, provided that we will not disclose any personally identifiable monitoring information to any unaffiliated third party for any purpose other than to facilitate maintenance or repair of the System or to enforce our rights under this Note. Upon any event of default and after we give you any notice and right to cure required by applicable law, and/or to the extent necessary to perform any maintenance we elect to perform, you grant us (and have caused and otherwise will cause any Entity Owner to grant us) and our agents, employees and contractors a non-exclusive right to access the Residence, as necessary or convenient to enforce our rights under this Note, including to access, disable and/or remove the System or make any necessary modifications to the System. We will provide you with reasonable notice of our need to access the Residence prior to doing so, which notice may be by an email or recorded telephone message. You will ensure that our access rights are preserved and will not interfere with or allow any third party to interfere with such rights or access. So long as any amounts remain unpaid under this Note, you agree to: (1) ensure that any modifications, attachments, improvements, revisions and/or additions to the System are made solely by qualified and properly licensed contractors; (2) execute and deliver any interconnection agreement required by your local electrical distribution system; (3) promptly notify us upon discovery of damage, malfunction or theft of the System; (4) use the System primarily for personal, family or household purposes; and (5) not transfer or assign any Environmental Incentive without our written consent unless the transfer or assignment is an arms-length transaction and the proceeds of the transfer or assignment are used to pay down amounts outstanding under this Note. Upon your default, we may direct any party to an Environmental Incentive to pay us any amounts otherwise due to you under the Environmental Incentive and you agree that such party shall have no liability to you on account of any payment made by such party to us pursuant to our direction.

**MONITORING AND MAINTENANCE:** You understand that you are solely responsible for proper maintenance and operation of the System. However, in our absolute discretion, we may elect voluntarily to provide you, directly or through contractors of our choice, including Contractor, System monitoring and maintenance services, a help line to address System performance issues and/or referrals to qualified maintenance and repair companies or personnel. Notwithstanding any language in this Note, any other document provided to you or any statement made to you, excepting only any separate warranty we give you, we have no obligation to provide (or continue to provide) such services to you.

**FEES:** If any part of a payment is more than ten days late, we will charge you a late fee equal to 5% of the scheduled payment or $25, whichever is greater. If any payment you make is returned unpaid for insufficient funds, you will be charged a returned payment fee of $20.

**COMPLETION CERTIFICATE:** Upon our request, once the System is Installed to your reasonable satisfaction and becomes operational, you agree to sign and deliver to us a Completion Certificate certifying to such Installation and operation.

**EVENTS OF DEFAULT:** Subject to applicable law, you will be in default under this Note upon the occurrence of any of the following events: (1) you fail to make any payment under this Note in full within ten (10) days after the payment due date; (2) you fail to perform or violate any material obligation in this Note; (3) any representation or warranty made by you in this Note or any statement made by you in the Application proves to have been false or misleading in any material respect when made; (4) you fail to advise us of any material adverse development in your creditworthiness from the time of the Application to the date of this Note; (5) you violate any law or utility system requirement in connection with the System, including operation of the System prior to receipt of permission from the utility to operate the System and connect it to the utility's electrical grid; (6) you take any action or fail to take any action resulting in a termination of any manufacturer or Contractor warranties in connection with the System; (7) you attempt to assign or transfer this Note; (8) any party, including a lender that has made or subsequently makes any loan secured by the Residence, asserts that it has rights in the Collateral that

THIS IS A COPY
This is a Copy, not the Authoritative Copy held
by the designated custodian

are superior to our rights in the Collateral; (9) your estate fails to acknowledge its obligations under this Note upon our request after your death, in a written document acceptable to us in our reasonable discretion; (10) you make an assignment or any general arrangement for the benefit of creditors; have a liquidator, administrator, receiver, trustee, conservator or similar official appointed for you or your property, file a petition or otherwise commence, authorize or acquiesce in the commencement of a proceeding or cause of action under any bankruptcy or similar law for the protection of creditors, or have such a petition filed against you and such petition is not withdrawn or dismissed for twenty (20) business days after such filing; (11) you otherwise become bankrupt or insolvent (however evidenced) or are unable to pay your debts as they fall due; (12) any mortgage on the Residence is foreclosed; or (13) more than fifty percent of the System is destroyed or stolen. Despite the foregoing, if the Residence is in Massachusetts, you will only be in default if you fail to make any payment under this Note in full within ten (10) days after the payment due date or we reasonably believe the value of the Collateral has been impaired. If required by applicable law, we will only consider you in default for other than non-payment if the prospect of your payment, performance or our realization of the Collateral is significantly impaired.

**ACCELERATION; DEFAULT REMEDIES:** Subject to applicable law (including any notice, cure and/or redemption rights provided by applicable law), upon any default, we may: (1) declare immediately due and payable the entire unpaid balance of the Amount Financed, plus accrued and unpaid interest and any other amounts lawfully due hereunder (or choose not to "accelerate" this Note in such manner); (2) remotely disable the functioning of the Equipment, whether or not we then attempt to remove the Equipment; (3) enter upon the Residence and disable and/or remove the Equipment (or leave the Equipment in place); (4) sell or otherwise dispose of any Collateral, including the Equipment and/or any Environmental Incentives (or defer disposing of the Collateral); (5) assume your rights under any Environmental Incentives and give notice to the other parties thereto that payments thereunder shall be made to us and not to you; (6) initiate a collection action against you; (7) recover our costs of repossession, storage and collection; and (8) exercise any other rights provided by this Note or applicable law. If the Residence is in Connecticut, before remotely disabling the functioning of the System, we will give you at least 15 days' advance written notice of our intent to do so. The notice will describe the default we believe entitles us to remotely disable the functioning of the System and will include the name, title, address and telephone number of a person with whom you may communicate about our security interest. Except as prohibited by applicable law, interest will continue to accrue after maturity or acceleration of this Note (and after any judgment) at the Daily Rate. Any waiver of our rights must be in writing, and any waiver of any default will not constitute a waiver of any subsequent or continuing default.

**ATTORNEYS' FEES:** Subject to applicable law and any limits specified in the Notices section of this Note, in the event we obtain a judgment against you after an event of default involving a payment delinquency of at least ten days, you agree to pay our reasonable attorney's fees that are paid to an attorney who is not our employee and that are incurred in the collection of this Note.

**ASSIGNMENT; HOME SALE:** If you sell (or any Entity Owner sells) the Residence, either you or the purchaser of the Residence (the "Purchaser") may pay off the Loan. Or, you may instead transfer this Note to the Purchaser if, and only if, the Purchaser meets our transfer criteria and signs an instrument, in a form we provide, agreeing to be bound by your obligations under this Note. We may establish and modify transfer criteria from time to time in light of interest rate and market conditions and such other factors as we deem relevant.   You may not transfer this Note to any person other than a Purchaser. We may transfer or assign this Note and/or any of our rights or obligations, and such transfer or assignment shall not result in any changes to your rights and obligations under this Note.

**ENTIRE AGREEMENT:** This Note constitutes the entire agreement of the parties relating to the Loan. This Note replaces any earlier contract of a similar nature. No oral modification is valid.

**NOTICE AND CURE:** Prior to initiating a lawsuit or arbitration regarding a legal dispute or claim relating in any way to this Note, the System, the Collateral or the work performed by Contractor (as more fully defined in the Arbitration Provision, a "Claim"), the party asserting the Claim (the "Complaining Party") shall give the other party (the "Defending Party") written notice of the Claim (a "Claim Notice") and a reasonable opportunity, not less than 30 days, to resolve the Claim. If we are the Complaining Party, we will send the Claim Notice to you at your address appearing in our records or, if you are known to be represented by an attorney, to your attorney at his or her office address. A Claim Notice to you may be in the form of a collection letter. Any Claim Notice to us shall be sent by certified mail, return receipt requested, to **Cross River Bank, c/o Sunlight Financial LLC, PO Box 1654 Cedar Rapids, IA 52406-1654** (such address, or any subsequent address we give you notice of, the "Notice Address"), Attn: Claim Notice. We will credit or reimburse you for the documented cost of the certified mail. Any Claim Notice you send must provide your name, mailing address and telephone number. Any Claim Notice must explain the nature of the Claim and the relief that is demanded. The Complaining Party must reasonably cooperate in providing any information about the Claim that the Defending Party reasonably requests.

**CREDIT REPORTING:** You authorize us to make inquiries concerning your credit history and standing. We may report information about your performance under this Note to credit bureaus (and other parties). **As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit. Late payments, missed payments or other defaults on this Note may be reflected in your credit report.** If you believe that any information about this Note that we have furnished to a

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-317819535B09

THIS IS A COPY
This is a Copy NOT of the Authoritative Copy held
by the designated custodian

consumer reporting agency is inaccurate, or if you believe that you have been the victim of identity theft in connection with any Note made by us, write to us at the Notice Address, Attn: Reporting Error. In your letter: (1) provide your name, mailing address and phone number; (2) identify the specific information that is being disputed; (3) explain the basis for the dispute; and (4) provide any supporting documentation you have that substantiates the basis of the dispute. If you believe that you have been the victim of identity theft, submit an identity theft affidavit or identity theft report.

**TRUTHFULNESS OF APPLICATION**: You represent that every statement made in the Application is true, complete and correct and that you have attained the age of majority and are legally competent to execute this Agreement in the state in which the Residence is located.

**TELEPHONE RECORDINGS:** You understand and agree that we may monitor and/or record any of your phone conversations with any of our representatives. However, we are not required to monitor and/or record any such conversations.

**CONTACTING YOU; PHONE AND TEXT MESSAGES**. To the extent permitted by applicable law, you authorize us and our affiliates, agents, assigns and service providers (collectively, the "Messaging Parties") to contact you using automatic telephone dialing systems, artificial or prerecorded voice message systems, text messaging systems and automated email systems in order to provide you with information about this Note, including information about upcoming payment due dates, missed payments and returned payments. You authorize the Messaging Parties to make such contacts using any telephone numbers (including wireless, landline and VOIP numbers) or email addresses you supply to the Messaging Parties in connection with the Application, the Messaging Parties' servicing and/or collection of amounts you owe under this Note or any other matter. You understand that anyone with access to your telephone or email account may listen to or read the messages the Messaging Parties leave or send you, and you agree that the Messaging Parties will have no liability for anyone accessing such messages. You further understand that, when you receive a telephone call, text message or email, you may incur a charge from the company that provides you with telecommunications, wireless and/or Internet services, and you agree that the Messaging Parties will have no liability for such charges except to the extent required by applicable law. You expressly authorize the Messaging Parties to monitor and record your calls with the Messaging Parties. You understand that, at any time, you may withdraw your consent to receive text messages and calls to your cell phone or to receive artificial or prerecorded voice message system calls by calling the Messaging Parties at 855-326-9784. To stop text messages, you can also simply reply "STOP" to any text message the Messaging Parties send you. To stop emails, you can follow the opt-out instructions included at the bottom of the Messaging Parties' emails.

**WAIVER OF RIGHT TO TRIAL BY JURY**: YOU AND WE ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL RIGHT BUT MAY BE WAIVED IN CERTAIN CIRCUMSTANCES. TO THE EXTENT PERMITTED BY LAW, YOU AND WE KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION ARISING OUT OF OR RELATED TO THIS CONTRACT. THIS JURY TRIAL WAIVER SHALL NOT AFFECT OR BE INTERPRETED AS MODIFYING IN ANY FASHION ANY ARBITRATION PROVISION TO WHICH YOU AND WE ARE SUBJECT, WHICH CONTAINS ITS OWN SEPARATE JURY TRIAL WAIVER.

**PAYMENT OF DISPUTED BALANCE**: If you wish to make payment in satisfaction of a disputed balance, you must send it to us at the Notice Address, Attn: Disputed Balance, together with a letter of explanation. We may deposit any such payment without such deposit constituting a satisfaction of the disputed balance.

**BANKRUPTCY**: You represent that you are not contemplating bankruptcy and that you have not consulted with an attorney regarding bankruptcy in the past six months. Any communication with us required or permitted under the Federal Bankruptcy Code must be in writing, must include your Loan number, and must be sent to us at the Notice Address, Attn: Bankruptcy Notice.

**TAX IMPLICATIONS**: Installing a System may entitle you to a tax credit or other benefits. You should consult a tax advisor concerning available benefits and whether you qualify. This loan and your requirement to make payments does not depend on the availability of any tax benefit or your receipt of any tax credit or deduction.

**GOVERNING LAW**: Cross River Bank is located in the State of New Jersey and this Note will be entered into in the State of New Jersey. This Note shall be governed by: (1) federal law and the law of the state of New Jersey regarding matters including, but not limited to, interest, late fees and returned check fees; (2) the Federal Arbitration Act regarding the ARBITRATION PROVISION; and (3) certain laws of the state where the Residence is located regarding other matters.

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-317819535B03

THIS IS A COPY
This is a Copy view of the Authoritative Copy held
by the designated custodian

**NOTICES:** If the Residence is in—

_Alabama:_ CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

If you attempt to make a payment, whether by automated withdrawal from your designated account or by other means, and the payment cannot be made due to (i) insufficient funds in your account, (ii) the closure, change or inaccessibility of your account without your having notified Lender as provided herein, or (iii) for any other reason (other than an error by Lender), you will pay Lender an additional fee of $15 for each returned or failed automated withdrawal or other item, unless prohibited by applicable law. You will pay this fee when it is assessed.

_Arizona:_ **NOTICE TO BUYER 1. Do not sign this agreement if any of the spaces intended for the agreed terms to the extent of then available information are left blank. 2. You are entitled to a copy of this agreement at the time you sign it. 3. You may pay off the full unpaid balance due under this agreement at any time, and in so doing you shall be entitled to a full rebate of the unearned finance and insurance charges. 4. You may cancel this agreement any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right. 5. It shall not be legal for the seller to enter your premises unlawfully or commit any breach of the peace to repossess goods purchased under this agreement.**

Notice: Borrower may request that the initial disclosures prescribed in the Truth in Lending Act (15 United States Code §§ 1601 through 1666j) be provided in Spanish before signing any loan documents.

Aviso:   Puede solicitar que las divulgaciones iniciales prescritas en la Ley de Prestamos Auténticos (Código Estados Unidos 15, S S, de 1601 hasta 1666j) sean provistas en Español antes de la firma de cualquier documento de prestamo.

_Arkansas:_ **Your obligation for attorneys' fees will be limited to ten percent (10%) of the amount of principal due, plus accrued interest, for services actually rendered**.

_California:_    You have the right to prohibit the use of information contained in your credit file in connection with transactions not initiated by you. You may exercise this right by notifying the consumer credit reporting agency. A married applicant may apply for a separate account. If Lender takes any adverse action as defined by Section 1785.3 of the California Civil Code and the adverse action is based, in whole or in part, on any information contained in a consumer credit report, you have the right to obtain within sixty (60) days a free copy of your consumer credit report from the consumer reporting agency which furnished your consumer credit report and from any other consumer credit reporting agency which compiles and maintains files on consumers on a nationwide basis. You have the right as described by Section 1785.16 of the California Civil Code to dispute the accuracy or completeness of any information in a consumer credit report furnished by the consumer credit reporting agency.

(AVISO PARA LOS QUE RESIDEN EN CALIFORNIA): SI SU PRÉSTAMO FUÉ NEGOCIADO PRIMERAMENTE EN ESPAÑOL, ESTAMOS OBLIGADOS A PRESENTARLE UNA TRADUCCIÓN EN ESPAÑOL DE LAS DISPOSICIONES REQUERIDAS POR LA REGULACIÓN FEDERAL Z, 12C.F.R. APARTADO 1026.

_Colorado:_ Your obligation for attorneys' fees will be limited to 15% of the amount due and payable on this Note when we refer this Note to an attorney for collection, or such additional fees as may be directed by a court.

_Connecticut:_ **THIS INSTRUMENT IS BASED UPON A HOME SOLICITATION SALE, WHICH SALE IS SUBJECT TO THE PROVISIONS OF THE HOME SOLICITATION SALES ACT. THIS INSTRUMENT IS NOT NEGOTIABLE.**

Your obligation for attorneys' fees will be limited to 15% of the amount due and payable on this Note when we refer this Note to an attorney for collection (or 15% of the amount of any judgment we obtain if the cash price of the Equipment exceeds $50,000).

_District of Columbia:_ (1) Your obligation for attorneys' fees will not exceed 10% of the amount found due in a foreclosure proceeding if the amount financed is $25,000 or less and the interest rate is greater than 6% per annum, or 15% of the unpaid balance for all other loans. (2) If this agreement was solicited at or near your residence and you do not want the goods or services, you may cancel this agreement by mailing a notice to the seller. The notice must say that you do not want the goods or services and must be mailed before midnight of the third business day after you signed this agreement. The notice must be mailed to: **Cross River Bank, c/o Sunlight Financial LLC, PO Box 1654 Cedar Rapids, IA 52406-1654**. If you cancel, the seller may not keep any of your cash down payment.

_Illinois:_ If we pledge this Note as security for an obligation we incur, the following applies: This instrument is non-negotiable in form but may be pledged as collateral security. If so pledged, any payment made to the payee, either of principal or of interest, upon the debt evidenced by this obligation, shall be considered and construed as a payment on this instrument, the same as though it were still in the possession and under the control of the payee named herein; and the pledgee holding this instrument as collateral security hereby makes said payee its agent to accept and receive payments hereon, either of principal or of interest.

THIS IS A COPY
This is a Copy View of the Authoritative Copy held by the designated custodian

*Iowa*: **THIS IS A CONSUMER CREDIT TRANSACTION.** You will not be required to pay attorneys' fees or collection costs. We will only consider you in default for other than non-payment if the prospect of payment, performance or our realization of the Collateral is materially impaired.

*Iowa, Missouri and Nebraska*: ORAL AGREEMENTS OR COMMITMENTS TO LOAN MONEY, EXTEND CREDIT OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT INCLUDING AGREEMENTS TO EXTEND OR RENEW SUCH DEBT ARE NOT ENFORCEABLE. TO PROTECT BORROWER(S) AND LENDER FROM MISUNDERSTANDING OR DISAPPOINTMENT, ANY AGREEMENTS YOU AND LENDER REACH COVERING SUCH MATTERS ARE CONTAINED IN THIS WRITING, WHICH IS THE COMPLETE AND EXCLUSIVE STATEMENT OF THE AGREEMENT BETWEEN BORROWER AND LENDER, EXCEPT AS THEY MAY LATER AGREE IN WRITING TO MODIFY IT.

*Kansas*: This written credit agreement is a final expression of the credit agreement between the Lender and you. This written credit agreement may not be contradicted by evidence of any prior oral credit agreement or of a contemporaneous oral credit agreement. Your obligation for attorneys' fees will be limited to 15% of the amount due and payable on this Note when we refer this Note to an attorney, who is not our salaried employee, for collection. You will not be charged for collection agency fees.

**NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time without penalty.**

*Louisiana*: Your obligation for attorneys' fees will be limited to 25% of the amount due and payable on this Note after default and referral to an attorney for collection.

*Maine, New York, Rhode Island and Vermont*: A consumer report (credit report) may be obtained from a consumer-reporting agency (credit bureau) in connection with this Loan. If you request, (1) you will be informed whether or not consumer reports were obtained, and (2) if reports were obtained, you will be informed of the names and addresses of the credit bureaus that furnished the reports. If Lender agrees to make this Loan to you, a consumer credit report may be requested or used in connection with renewals or extensions of any credit for which you applied, reviewing your Loan, taking collection action on the Loan, or legitimate purposes associated with the Loan.

*Maryland*: You and Lender have agreed that this Note is governed by federal law and the laws of New Jersey without regard to conflict of laws rules; if any court should nevertheless determine that this Note is subject to Maryland laws concerning credit, then only to the extent that Maryland law applies, you and Lender agree and elect that this Agreement is made under and governed by Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 123 of the Commercial Law Article of the Annotated Code of Maryland, except as preempted by federal law. Lender may repossess the Collateral with or without resort to legal process.

*Massachusetts*: Massachusetts law prohibits discrimination based upon sex, gender identity, marital status, age, or sexual orientation. If this Note is secured by a non-possessory interest in consumer goods, the Events of Default Section of this Note is enforceable only to the extent that the default is material and consists of a failure to make one (1) or more payments as required by the Note or the occurrence of an event that substantially impairs the value of the collateral.

If you attempt to make a payment, whether by automated withdrawal from your designated account or by other means, and the payment cannot be made due to (i) insufficient funds in your account, (ii) the closure, change or inaccessibility of your account without your having notified Lender, or (iii) for any other reason (other than an error by Lender), your will pay Lender an additional fee of $10 for each returned or failed automated withdrawal or other item, unless prohibited by applicable law. you will pay this fee when it is assessed.

*Minnesota*: You are not obligated to pay attorney's fees.

*Mississippi*: We will apply payments first to accrued but unpaid interest, then to the unpaid balance of the Amount Financed, then to outstanding charges.

*Missouri*: **Oral agreements or commitments to loan money, extend credit or forbear from enforcing repayment or debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

*Nebraska*: A credit agreement must be in writing to be enforceable under Nebraska law. To protect you and Lender from any misunderstandings or disappointments, any contract, promise, undertaking, or offer to forebear repayment of money or to make any other financial accommodation in connection with this Loan, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this Loan, must be in writing to be effective.

*New Hampshire*: If Lender refers this Note to an attorney for collection, you agree to pay Lender's reasonable attorneys' fees. However, if you prevail in (1) any action, suit, or proceeding Lender brings, or (2) an action brought by you in connection

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-317819535B03

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

with this Note, reasonable attorneys' fees shall be paid to you. If you successfully assert a partial defense or setoff, recoupment, or counterclaim to an action brought by Lender, the court may withhold from Lender the entire amount or such portion of the attorneys' fees as the court considers equitable.

*New Jersey:* The section headings of this agreement are not contract terms.  (1) You agree to pay our reasonable attorney's fees, up to 20% of outstanding principal and interest, paid in the collection of this Note to an attorney who is not our employee. (2) No provision of this Note is void, unenforceable or inapplicable by virtue of language to the effect that such provision only applies to the extent permitted (or not prohibited) by applicable law.

*North Carolina*: You agree to pay our reasonable attorney's fees up to 15% of the outstanding balance owing on the Note.

*Ohio:* (1) You will not be required to pay attorneys' fees. (2) The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with the law.

*Oklahoma*: You agree to pay our reasonable attorney's fees, not in excess of fifteen percent (15%) of the unpaid debt, after default and referral to an attorney not a salaried employee of ours.

*South Carolina:* Your obligation for attorneys' fees will not exceed 15% of the outstanding principal and interest under this Note.

*South Dakota*: Any improprieties in making the Loan or in loan practices may be referred to the Division of Banking, South Dakota Department of Labor and Regulation, 1601 N. Harrison Avenue, Suite 1, Pierre, South Dakota, 57501; Phone: (605) 773-3421.

*Utah:* This Note is the final expression of the agreement between you and Lender and it may not be contradicted by evidence of an alleged oral agreement.   As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

**VERMONT RESIDENTS - NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**Lender is engaged in loan production. EACH BORROWER SHOULD RETAIN A COPY FOR HIS/HER RECORDS.**

---

*Washington:* ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

*West Virginia.* **You will not be required to pay attorneys' fees or collection costs as a result of a default under this Note.**

*Wisconsin (if the Amount Financed in the TILA DISCLOSURES is $25,000 or less):* You will only be in default if: (1) you have outstanding an amount exceeding one full payment due under this Note that remains unpaid for more than 10 days after its due date; (2) you fail to pay the first payment or the last payment due under this Note within 40 days of its due date; or (3) you fail to perform or violate any term of this Note the breach of which materially impairs your ability to pay amounts due under the Note or materially impairs the condition, value or protection of or our right in the Collateral.

*Wisconsin:* You will not be required to pay attorney's fees. If you are a married Wisconsin resident: (1) your signature confirms that the obligation evidenced by this Note is being incurred in the interest of your marriage or family. (2) No provision of any marital property agreement, unilateral statement under § 766.59 of the Wisconsin Statutes, or court decree under § 766.70 adversely affects our interest unless prior to the time that this Note is approved, we are furnished with a copy of the marital property agreement, statement, or decree or have actual knowledge of the adverse provision**.**

---

**MARRIED WISCONSIN RESIDENTS MUST FURNISH THEIR NAME AND THEIR SPOUSE'S NAME AND ADDRESS TO CROSS RIVER BANK, C/O SUNLIGHT FINANCIAL LLC, PO BOX 1654 Cedar Rapids, IA 52406-1654.**

---

**MISCELLANEOUS:** Any provision of this Note that is found to be invalid under applicable law shall be invalid only with respect to the offending provision and only to the extent of the invalidity. However, notwithstanding any provision of this Note to the contrary, if any law applicable to this Note is finally interpreted so that the interest or other fees and charges collected or to be collected in connection with this Note exceed the legally permitted limit, then any such interest, fee or charge shall be reduced by the amount necessary to comply with the maximum permitted limit and any amounts above such limit already collected will be credited or refunded to you. If more than one person signs this Note as Borrower or Co-

THIS IS A COPY
This is a Copy View of the Authoritative Copy held
by the designated custodian

Borrower, your rights and obligations shall be joint and several, and each of you shall be personally liable for all amounts due under this Note. Singular words shall be construed in the plural, and plural in the singular, as their context may require, or as required to give effect to the terms of this Note. This Note may be executed electronically or manually. If executed manually, this Note may be executed in counterparts, which will together constitute a single agreement. Any copy of this Note (including a copy printed from an image of this Note that has been stored electronically) may be introduced into evidence in any legal proceeding.

**IMPACT OF SECURITY INTEREST ON POTENTIAL HOME MORTGAGE:** We believe that our security interest in the Equipment should take priority over any mortgage on the Residence, whether such mortgage is granted before or after the date of this Note. It is possible that a lender considering making a loan secured by the Residence, including but not limited to a mortgage refinancing a mortgage now in existence, will deem the Equipment to be part of the Residence and will object to our interest in the Equipment taking priority over its interest in the Residence. Upon request, we will confirm to any mortgage lender that our interest in the Equipment is limited to the Equipment and does not extend to any part of the Residence. **However, it is possible that a lender will insist upon repayment of this Note in full before such lender makes a new mortgage loan secured by the Residence.**

**Insurance:** You covenant and agree that from the Installation date and at all times until the Loan is paid in full, you will maintain insurance of a type and in an amount sufficient to cover the replacement cost of the System. This insurance coverage may be provided by any insurer of your choice who is authorized by law to provide such coverage.

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-317919535B09

THIS IS A COPY
This is a Copy view of the Authoritative Copy held
by the designated custodian

# ARBITRATION PROVISION (EXHIBIT A)

**THIS ARBITRATION PROVISION ("PROVISION") MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE MAY HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

(a) *Effect of Provision.* Unless prohibited by applicable law, you and we agree that either party may elect to require arbitration of any Claim under this Provision.

(b) *Certain Definitions.* As used in this Provision, the following terms have the following meanings:

(i) Our "Related Parties" include all our parent companies, subsidiaries and affiliates, as well as the Contractor and Sunlight Financial, LLC (which has provided services to Lender and Contractor in connection with this Note) and their parent companies, subsidiaries and affiliates, and our and their employees, directors, officers, shareholders, governors, managers and members. Our "Related Parties also include third parties, such as subcontractors, that you bring a Claim against at the same time you bring a Claim against us or any other Related Party. References to you include any Entity Owner that owns the Residence.

(ii) "Claim" means any claim, dispute or controversy between you and us (or any Related Party) that arises from or relates in any way to this Note (including any amendment, modification or extension of this Note), the Contractor Agreement, the work performed by the Contractor or a subcontractor; the System, including maintenance and servicing of the System; the arrangements between and among us, Sunlight and the Contractor; any of our marketing, advertising, solicitations and conduct relating to your request for credit or the System; our collection of any amounts you owe; or our disclosure of or failure to protect any information about you. "Claim" is to be given the broadest reasonable meaning and includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims, and claims based on constitution, statute, regulation, ordinance, common law rule (including rules relating to contracts, torts, negligence, fraud or other intentional wrongs) and equity. It includes disputes that seek relief of any type, including damages and/or injunctive, declaratory or other equitable relief. Despite the foregoing, "Claim" does not include any individual action brought by you in small claims court or your state's equivalent court, unless such action is transferred, removed, or appealed to a different court. In addition, except as set forth in the immediately following sentence, "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Provision or any part thereof (including, without limitation, subsections (f)(iii), (f)(iv) and/or (f)(v) (the "Class Action and Multi-Party Claim Waiver"), the last sentence of subsection (j) and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of this Note as a whole is for the arbitrator, not a court, to decide. "Claim" also does not include any "self-help remedy" (that is, any steps taken to enforce rights without a determination by a court or arbitrator) or any individual action by you or us to prevent the other party from using any self-help remedy, so long as such self-help remedy or individual judicial action does not involve a request for monetary relief of any kind.

(iii) "Proceeding" means any judicial or arbitration proceeding regarding any Claim. "Complaining Party" means the party who threatens or asserts a Claim in any Proceeding and "Defending Party" means the party who is a subject of any threatened or actual Claim. "Claim Notice" means written notice of a Claim from a Complaining Party to a Defending Party.

(c) *Arbitration Election; Administrator; Arbitration Rules.*

(i) A Proceeding may be commenced after the Complaining Party complies with subsection (k). The Complaining Party may commence the Proceeding either as a lawsuit or an arbitration by following the appropriate filing procedures for the court or the arbitration administrator selected by the Complaining Party in accordance with this subsection (c). If a lawsuit is filed, the Defending Party may elect to demand arbitration under this Provision of the Claim(s) asserted in the lawsuit. If the Complaining Party initially asserts a Claim in a lawsuit on an individual basis but then seeks to assert the Claim on a class, representative or multi-party basis, the Defending Party may then elect to demand arbitration. A demand to arbitrate a Claim may be given in papers or motions in a lawsuit. If you demand that we arbitrate a Claim initially brought against you in a lawsuit, your demand will constitute your consent to arbitrate the Claim with the administrator of our choosing, even if the administrator we choose does not typically handle arbitration proceedings initiated against consumers.

(ii) Any arbitration Proceeding shall be conducted pursuant to this Provision and the applicable rules of the arbitration administrator (the "Administrator") in effect at the time the arbitration is commenced. The Administrator will be the American Arbitration Association ("AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org.; JAMS, 620 Eighth Avenue, 34th Floor, New York, NY 10018, www.jamsadr.org; or any other company selected by mutual agreement of the parties. If both AAA and JAMS cannot or will not serve and the parties are unable to select an Administrator by mutual consent, the Administrator will be selected by a court. Notwithstanding any language in this Provision to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any Administrator that has in place a formal or informal policy that is inconsistent with the Class Action and Multi-Party Claim Waiver. The arbitrator will be selected under the Administrator's rules, except that the arbitrator must be a lawyer with at least ten years of experience or a retired judge unless the parties agree otherwise. The party initiating an arbitration gets to select the Administrator.

(d) *Non-Waiver.* Even if all parties have elected to litigate a Claim in court, you or we may elect arbitration with respect to any Claim made by a new party or any new Claim asserted in that lawsuit (including a Claim initially asserted on an individual basis but modified to be asserted on a class, representative or multi-party basis), and nothing in that litigation shall constitute a waiver of any rights under this Provision. This Provision will apply to all Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Provision.

(e) *Location And Costs.* The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve a Claim based on the papers submitted by the parties and/or through a telephone hearing. However, any arbitration hearing that you attend will take place in a location that is reasonably convenient for you. We will consider any good faith request you make for us to pay the Administrator's or arbitrator's filing, administrative, hearing and/or other fees if you cannot obtain a waiver of such fees from the Administrator and we will not seek or accept reimbursement of any such fees we agree to pay. We will also pay any fees or expenses we are required by law to pay or that we must pay in order for this Provision to be enforced. We will pay the reasonable fees and costs you incur for your

DocuSign Envelope ID: E0D5B6DE-7A82-4FC2-AB13-317819535B09
THIS IS A COPY
This is a Copy. The original Authoritative Copy held by the designated custodian

attorneys, experts and witnesses if you are the prevailing party in an arbitration Proceeding or if we are required to pay such amounts by applicable law or by the Administrator's rules. The arbitrator shall not limit the attorneys' fees and costs to which you are entitled because your Claim is for a small amount. Notwithstanding any language in this Provision to the contrary, if the arbitrator finds that any Claim or defense is frivolous or asserted for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the arbitrator may award attorneys' and other fees related to such Claim or defense to the injured party so long as such power does not impair the enforceability of this Provision.

(f) *No Class Actions Or Similar Proceedings; Special Features Of Arbitration*. **IF YOU OR WE ELECT TO ARBITRATE A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO: (i) HAVE A COURT OR A JURY DECIDE THE CLAIM; (ii) OBTAIN INFORMATION PRIOR TO THE HEARING TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT; (iii) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, EITHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR CLASS OPPONENT; (iv) ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; OR (v) JOIN OR CONSOLIDATE CLAIM(S) INVOLVING YOU WITH CLAIMS INVOLVING ANY OTHER PERSON. THE RIGHT TO APPEAL IS MORE LIMITED IN ARBITRATION THAN IN COURT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

(g) *Getting Information*. In addition to the parties' rights under the Administrator's rules to obtain information prior to the hearing, either party may ask the arbitrator for more information from the other party. The arbitrator will decide the issue in his or her sole discretion, after allowing the other party the opportunity to object.

(h) *Effect Of Arbitration Award*. Any court with jurisdiction may enter judgment upon the arbitrator's award. The arbitrator's award will be final and binding, except for: (i) any appeal right under the Federal Arbitration Act, 9 U.S.C. §1, et seq. (the "FAA"); and (ii) Claims involving more than $50,000 (including Claims that may reasonably require injunctive relief costing more than $50,000). For Claims involving more than $50,000, any party may appeal the award to a three-arbitrator panel appointed by the administrator, which will reconsider from scratch any aspect of the initial award that is appealed. The panel's decision will be final and binding, except for any appeal right under the FAA. Costs in connection with any such appeal will be borne in accordance with subsection e of this Provision.

(i) *Governing Law*. Your credit purchase of the System involves interstate commerce and this Provision shall be governed by the FAA, and not Federal or state rules of civil procedure or evidence or any state laws that pertain specifically to arbitration. The arbitrator is bound by the terms of this Provision. The arbitrator shall follow applicable substantive law to the extent consistent with the FAA, applicable statutes of limitation and applicable privilege rules, and shall be authorized to award all remedies available in an individual lawsuit under applicable substantive law, including, without limitation, compensatory, statutory and punitive damages (which shall be governed by the constitutional standards applicable in judicial proceedings), declaratory, injunctive and other equitable relief, and attorneys' fees and costs. The arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based.

(j) *Survival, Severability, Primacy*. In the event of any conflict or inconsistency between this Provision and the Administrator's rules or the rest of this Note, this Provision will govern. This Provision shall survive the full payment of any amounts due under this Note; any rescission or cancellation of this Note; any exercise of a self-help remedy; our sale or transfer of this Note or our rights under this Note; any legal proceeding by us to collect a debt owed by you; and your (or our) bankruptcy. If any part of this Provision cannot be enforced, the rest of this Provision will continue to apply. However, if the Class Action and Multi-Party Claim Waiver is declared invalid in a proceeding between you and us, without in any way impairing the right to appeal such decision, this entire Provision (other than this sentence) shall be null and void in such proceeding.

(k) *Pre-Dispute Resolution Procedure*. Before a Complaining Party asserts a Claim in any Proceeding (including as an individual litigant or as a member or representative of any class or proposed class), the Complaining Party shall give the Defending Party: (i) a Claim Notice providing at least 30 days' written notice of the Claim and explaining in reasonable detail the nature of the Claim and its supporting facts; and (ii) a reasonable good faith opportunity to resolve the Claim on an individual basis without the necessity of a Proceeding. If you are the Complaining Party, you must send any Claim Notice to us at **Cross River Bank, c/o Sunlight Financial LLC, PO Box 1654 Cedar Rapids, IA 52406-1654**, Attn: Claim Notice (or such other address as we shall subsequently provide to you). If we are the Complaining Party, we will send the Claim Notice to you at your address appearing in our records or, if you are represented by an attorney, to your attorney at his or her office address. A Claim Notice to you may be in the form of a collection letter. If the Complaining Party and the Defending Party do not reach an agreement to resolve the Claim within 30 days after the Claim Notice is received, the Complaining Party may commence a Proceeding, subject to the terms of this Provision. Neither the Complaining Party nor the Defending Party shall disclose in any Proceeding the amount of any settlement demand made by the Complaining Party or any settlement offer made by the Defending Party until after the arbitrator or court determines the amount, if any, to which the Complaining Party is entitled (before the application of subsection (l) of this Provision). No settlement demand or settlement offer may be used in any Proceeding as evidence or as an admission of any liability or damages.

(l) *Special Payment*. If: (i) you submit a Claim Notice in an arbitration Proceeding on your own behalf (and not on behalf of any other party) and comply with all of the requirements (including timing and confidentiality requirements) of subsection (k); (ii) we refuse to provide you with the money damages you request; and (iii) the arbitrator issues you an award that is greater than the latest money damages you requested at least ten days before the date the arbitrator was selected, then we will pay you the amount of the award or $7,500, whichever is greater, in addition to the attorneys' fees and expenses (including expert witness fees and costs) to which you are otherwise entitled. We encourage you to address all Claims you have in a single Claim Notice and/or a single arbitration. Accordingly, this $7,500 minimum award is a single award that applies to all Claims you have asserted or could have asserted in the arbitration, and multiple awards of $7,500 are not contemplated by this subsection l.

THIS IS A COPY

This is a Copy NOT of the Authoritative Copy held
by the designated custodian

## NOTICE OF CANCELLATION

4/23/2021 | 7:03 PM EDT

_____
(date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to Cross River Bank, c/o Sunlight Financial LLC, at 101 N Tryon St, Suite 1000, Charlotte, NC 28246   NOT LATER THAN MIDNIGHT OF THE THIRD BUSINESS DAY FROM THE DATE ABOVE.

 I HEREBY CANCEL THIS TRANSACTION.

_____    _____
(Date)                                    (Borrower's Signature)

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-317919535B03

THIS IS A COPY
This is a copy NOT of the Authoritative Copy held
by the designated custodian

## NOTICE OF CANCELLATION

4/23/2021 | 7:03 PM EDT

_____
(date)

You may CANCEL this transaction, without any Penalty or Obligation, within THREE BUSINESS DAYS from the above date.

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within TEN DAYS following receipt by the seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence, in substantially as good condition as when received, any goods delivered to you under this contract or sale, or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within 20 days of the date of your Notice of Cancellation, you may retain or dispose of the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this Cancellation Notice or any other written notice, or send a telegram, to Cross River Bank, c/o Sunlight Financial LLC, at 101 N Tryon St, Suite 1000, Charlotte, NC 28246  NOT LATER THAN MIDNIGHT OF THE THIRD BUSINESS DAY FROM THE DATE ABOVE.

 I HEREBY CANCEL THIS TRANSACTION.

_____      _____
        (Date)                         (Borrower's Signature)

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-347819535B03

THIS IS A COPY

This is a copy view of the Authoritative Copy held by the designated custodian

---

### NOTICE TO CO-SIGNER (Traduccíon en Inglés Se Requiere Por La Ley)

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the other Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

### AVISO PARA EL FIADOR (Spanish Translation Required By Law)

Se le está pidiendo que garantice esta deuda. Piénselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este préstamo no paga la deuda, usted tendrá que pagarla. Esté seguro de que usted podrá pagar si sea obligado a pagarla y de que usted desea aceptar la responsabilidad.

Si la persona que ha pedido el préstamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que pueden usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumpla con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsabilidad de la deuda.

---

| IF YOU ARE A CO-BORROWER WHO DOES NOT RESIDE AT THE RESIDENCE, YOU ACKNOWLEDGE THAT, BEFORE SIGNING THE NOTE, YOU RECEIVED THIS NOTICE TO CO-SIGNER. | SI USTED ES UN CO-PRESTATARIO QUE NO RESIDE EN LA RESIDENCIA, USTED RECONOCE QUE, ANTES DE FIRMAR LA NOTA, USTED RECIBIÓ ESTE AVISO. |
|---|---|

Co-Borrower: _____     Date: _____

THIS IS A COPY
This is a copy not of the Authoritative Copy held
by the designated custodian

### NOTICE TO COSIGNER
(for each Co-Borrower who does not reside at the Residence identified in the Note described below)

You agree to pay the debt identified below although you may not personally receive any property, services, or money. You may be sued for payment although the person who receives the property, services, or money is able to pay. You should know that the Total of Payments listed below does not include finance charges resulting from delinquency, late charges, repossession or foreclosure costs, court costs or attorney's fees, or other charges that may be stated in the note or contract. You will also have to pay some or all of these costs and charges if the note or contract, the payment of which you are guaranteeing, requires the borrower to pay such costs and charges. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the note, contract, or other writing that obligates you to pay the debt. Read that writing for the exact terms of your obligation.

### IDENTIFICATION OF DEBT(S) YOU MAY HAVE TO PAY

_____
*(Name of Borrower)*

_____
*(Name of Creditor)*

_____
*(Date)*

_____        _____
*(Kind of Debt)*                          *(Total of Payments)*

By signing below, you acknowledge that you have received a completed copy of this notice and of each writing that obligates you or the Borrower on this debt.

**Co-signer:** _____
            Signature                                    Date


**Co-signer:** _____
            Signature                                    Date

DocuSign Envelope ID: E0D5B6DF-7A82-4FC2-AB13-347819535B03

THIS IS A COPY
This is a Copy NOT of the Administrative Copy held
by the designated custodian

---

**NOTICE TO CO-SIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the other Borrower, such as suing you, etc. If this debt is ever in default, that fact may become a part of *your* credit record.

This notice is not the contract that makes you liable for the debt.

---

IF YOU ARE A CO-BORROWER WHO DOES NOT RESIDE AT THE RESIDENCE, YOU ACKNOWLEDGE THAT, BEFORE SIGNING THE NOTE, YOU RECEIVED THIS NOTICE TO CO-SIGNER.

Co-Borrower: _____     Date: _____

THIS IS A COPY

This is a Copy view of the Authoritative Copy held
by the designated custodian



Page Intentionally left blank



## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: E0D5B6DF7A824FC2AB13317919E35B03 | | Status: Completed |
| Subject: Documents for your DocuSign Signature | | |
| Source Envelope: | | |
| Document Pages: 30 | Signatures: 2 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 4 | Sunlight Financial |
| AutoNav: Enabled | | 400 Frank W. Burr Boulevard, Suite 37 |
| EnvelopeId Stamping: Enabled | | Suite 1000 |
| Time Zone: (UTC-05:00) Eastern Time (US & Canada) | | Teaneck, NJ  07666 |
| | | no_reply@sunlightfinancial.com |
| | | IP Address: 64.207.219.9 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Sunlight Financial | Location: DocuSign |
| 4/23/2021 4:43:00 PM | no_reply@sunlightfinancial.com | |
| Status: Authoritative Copy (1 of 1 documents) | Holder: Sunlight Financial | Location: DocuSign |
| 4/23/2021 7:03:17 PM | no_reply@sunlightfinancial.com | |
| Status: Receipt Confirmed | Holder: Sunlight Financial | Location: Sunlight Financial |
| 4/23/2021 7:03:44 PM | no_reply@sunlightfinancial.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Gregory Bowe | *Gregory Bowe* | Sent: 4/23/2021 4:43:02 PM |
| bowegreg75@gmail.com | 461B04C21C7B4E8... | Resent: 4/23/2021 4:43:27 PM |
| Security Level: Email, Account Authentication (None), Access Code, Authentication | | Viewed: 4/23/2021 5:20:13 PM |
| | | Signed: 4/23/2021 7:03:13 PM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 173.81.53.4 | |

**Authentication Details**
ID Check:
    Transaction: 31009837520465
    Result: passed
    Vendor ID: LexisNexis            Question Details:
    Type: iAuth                    passed   property.association.single.real
    Recipient Name Provided by: Recipient    passed   corporate.association.fake
    Information Provided for ID Check: Address   passed   property.street.in.city.real
    Performed: 4/23/2021 5:19:49 PM     passed   vehicle.historical.color.real
                              passed   vehicle.association.real
                              passed   vehicle.color.real

ID Check:
    Transaction: 31009838977635
    Result: passed
    Vendor ID: LexisNexis            Question Details:
    Type: iAuth                    passed   vehicle.association.real
    Recipient Name Provided by: Recipient    passed   vehicle.historical.association.real
    Information Provided for ID Check: Address   passed   county.lived.single.real
    Performed: 4/23/2021 6:57:30 PM     passed   vehicle.color.real
                              passed   property.association.single.real
                              passed   property.street.in.city.real

**Electronic Record and Signature Disclosure:**
    Accepted: 4/23/2021 5:20:13 PM
    ID: f9fcb298-61d5-4159-bdad-0d6f986f2e63

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 4/23/2021 4:43:02 PM |
| Certified Delivered | Security Checked | 4/23/2021 5:20:13 PM |
| Signing Complete | Security Checked | 4/23/2021 7:03:13 PM |
| Completed | Security Checked | 4/23/2021 7:03:13 PM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on 3/24/2021 5:45:06 AM
Parties agreed to: Gregory Bowe

## CONSENT TO ELECTRONIC RECEIPT AND/OR EXECUTION OF CERTAIN CONTRACTS AND RELATED NOTICES AND DISCLOSURES

You are considering the purchase of a residential solar energy system or the completion of a home improvement project (the "Project"). The installation company or contractor for the Project ("Contractor") and the lender or lenders who may finance your Project ("Lender(s)") and Sunlight Financial, LLC ("Sunlight") and any agents of the Contractor, Lender an Sunlight would like to provide you with the necessary contracts and other documents relating to your account, including but not limited to notices, periodic payment statements, and payment authorizations (together, "Documents") and have you execute or acknowledge receipt of Documents electronically. The Documents covered by this Consent are described in more detail under the caption "Scope of Consent" below. By electronically signing this Consent, you agree to receive and sign Documents electronically, as provided in this Consent. The Documents may be emailed to you directly or through DocuSign, Inc. ("DocuSign") or another company. As used in this Consent, references to "we," "us," and "our" refer to Contractor, Lender(s), Sunlight, DocuSign, any other company used to send you Documents and any assignee of their rights.

Please read the information below and, if you agree to the terms of this Consent, confirm your agreement by checking the box labeled "I agree to use electronic records and signatures" and clicking the box reading CONTINUE. This Consent will become effective once you take these actions and you subsequently sign electronically any Document we email you. (Your electronic signature on such Document will serve as a reasonable demonstration of your ability to read Documents emailed to you.)

### Getting paper copies

You do not need to execute this Consent in order to enter into a home improvement contract ("HIC") with Contractor or to obtain a loan or loans from Lender(s) ("Loan(s)"). Instead, you may have the HIC, and the loan agreement and promissory note evidencing any Loan ("Note"), provided to you in paper format. Also, by following the procedure described below, at any time you may obtain from us, without charge, a paper copy of any Document we email you and/or any Document you execute electronically. (You will also have the ability to download and print Documents we email you for execution through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such Documents are first sent to you.)

### Scope of Consent

This Consent applies to the HIC; the Loan or any related Note; any application for a HIC or Loan; any approval, adverse action, risk-based pricing or credit score notice in connection with your Application; any documents relating to the application, funding or servicing of the Loan, including but not limited to periodic statements, payment authorizations, and default notices; and any related Documents we provide you. If you electronically sign this Consent, we may send any Document to you electronically. However, we may instead send you any Document in paper format if we choose.

**Withdrawing your consent**

If you initially consent to receipt of Documents from us by email, you may at any time change your mind and tell us that thereafter you want to receive Documents in paper format only. To do so, you may: (1) decline to sign a Document from within your DocuSign session, and on the subsequent page select the check-box indicating you wish to withdraw your consent to receipt of Documents by email; or (2) send us an email to support@sunlightfinancial.com setting forth in the body of the email your email address, full name, mailing address, phone number and request to receive paper Documents rather than emailed Documents. If you initially elect to receive Documents in paper and not by email, your election may delay the execution of certain Documents and/or delivery of certain Documents. The same is true if you withdraw your consent to receive the Documents by email before you receive, sign and deliver the HIC and/or Note(s). However, we do not believe that a decision to execute and receive Documents in paper form will materially delay the completion of your Project or have any other material consequences.

**To update your email address**

You agree that we may send emails to you at the email address you have provided to us. To let us know of a change in your email address, you should send an email message to support@sunlightfinancial.com, setting forth in the body of the email your previous and new email addresses, full name, mailing address and phone number. In addition, if you create a DocuSign account and wish to change the login from your old email address to your new email address, you should log in to your DocuSign account and follow the online directions to change your email address in the DocuSign system.

**To obtain paper copies of Documents**

To obtain paper copies of any or all Documents previously provided to you by email or electronically executed, you must send us an email to support@sunlightfinancial.com, setting forth in the body your email address, full name, mailing address, phone number and request to receive specified Documents or all Documents previously provided by email or executed electronically.

**Minimum required hardware and software for receipt and retention of Documents by email**

To access the Documents by email, you must have a personal computer or device with the following software and settings:

| | |
|---|---|
| Operating System: | Windows 2000, Windows XP, Windows Vista; Mac OS X, iOS 9.0 or above, Android 5.0 or above |
| Browsers: | Final release versions of Internet Explorer 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); SafariTM 3.0 or above (Mac only), Google Chrome, Microsoft Edge, Safari |
| Email Program: | Any standard email program (e.g., Microsoft Outlook, Gmail; AOL) |

| | |
|---|---|
| PDF Reader: | Acrobat or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

Separate from any consent you have may have given the Company to contact you with marketing messages or communications, you agree that the Company may try to contact you about your application and/or account in writing, by email, or using prerecorded/artificial voice messages, SMS/text messages, and automatic telephone dialing systems, as the law allows. You also agree that the Company may try to contact you in those and in other ways at any address or telephone number you provide us or the Company discovers, even if the telephone number is a cell phone number or the contact results in a charge to you. You also agree to inform the Company if the telephone number you provided as part of the application changes.

In order to store or print the Documents, you need to have a printer connected to your computer or other device or you need to have a hard drive, disk drive or cloud-based document storage system.

These minimum requirements are subject to change. If these requirements change in a manner that creates a material risk that you will not be able to access or retain Documents by email, you will be sent a new Consent to execute or we will provide any subsequent Documents in paper format. Pre-release (e.g., beta) versions of operating systems and browsers are not supported.

By checking the box labeled "I agree to use electronic records and disclosures" and clicking the box reading CONTINUE, and/or by subsequently signing electronically any Document we send you, you confirm that you can access and read this Consent and you agree to receive Documents by email and to use the system we make available for the electronic execution of Documents.