IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY AND REBEKAH BOWE,** | :: | **CASE NO.: 2:22-CV-04266** |
| | :: | |
| Plaintiffs, | :: | **CHIEF JUDGE ALGENON L.** |
| | :: | **MARBLEY** |
| - vs - | :: | |
| | :: | **MAGISTRATE JUDGE ELIZABETH** |
| **SUNLIGHT FINANCIAL, LLC, et al.,** | :: | **PRESTON DEAVERS** |
| | :: | |
| Defendants. | :: | |
| | :: | |

**PLAINITFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT SUNLIGHT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

**I.  INTRODUCTION**

Sunlight[1] asserts that the arbitration clause at issue in this case is "valid" without having any knowledge of the circumstances surrounding its formation. However, Plaintiffs[2], through their Complaint and in their Affidavit, detail the deceptive trade practices that resulted in each of them being fraudulently induced to sign and execute an unconscionable Loan Agreement with Sunlight and Cross River.[3] Among other things, these documents detail how: (1) the Plaintiffs' signatures and initials were auto-filled throughout the contracts; (2) the Plaintiffs were each given an inaccurate and rapid summary of an 34-page contract; (3) the Plaintiffs were never told of or given an accurate explanation of the arbitration provisions at issue; (4) the Plaintiffs were assured their understandings

---

[1] "Sunlight" collectively refers to Defendants Sunlight Financial, LLC d/b/a Sunlight Financial and Cross River Bank, who filed a joinder to Sunlight Financial's Motion to Dismiss.

[2] "Plaintiffs" refers to each of the Plaintiffs in the above-captioned matter.

[3] Plaintiffs were also fraudulently induced to sign an unconscionable Sales Agreement, which is not directly at issue with the pending motions to dismiss from Sunlight.

of the loan had been accurately memorialized in the loan agreements; and (5) the Plaintiffs were told that receipt of various rebates, credits, and discounts was conditioned on their immediate signature to the contract.

The Plaintiffs' story is an unfortunately common one. Pink Energy[4] taught its employees, who acted as Sunlight agents, to use high-pressure sales tactics to quickly obtain deals on its solar systems. These tactics were routinely used to defraud hundreds of customers across the United States. While the undersigned have filed over fifteen cases in the Federal Court for the Southern District of Ohio, they have additional cases pending in the Northern District and, now, in the Stark County, Ohio Court of Common Pleas; all of which detail a pattern of fraudulent and deceptive behavior on behalf of the named defendants in this action.

The fraudulent and deceptive circumstances concerning this case and the harshness of the arbitration provisions at issue warrant this Court's denial of Sunlight's Motions to Dismiss. Alternatively, Plaintiffs' request that this Court grant their currently pending request for a limited stay and that this Court permit discovery between the parties as to the issue of whether the arbitration provisions in the Sunlight loan agreements are enforceable.

## II. FACTUAL BACKGROUND

### A. The Circumstances Surrounding the Arbitration Provisions Demonstrate How a Trained and Experienced Salesperson Used High-Pressured Sales Tactics to Fraudulently Induce Plaintiffs to Sign the Loan Agreements.

Around March 29, 2021, Plaintiffs became aware of Pink Energy, through public advertisements describing the company's residential solar energy systems. *See* Affidavit of Plaintiff at ¶ 15, which is attached herewith and incorporated herein as Exhibit A, and which is referred to

---

[4] "Pink Energy" collectively refers to Defendant Power Home Solar, which later became known as Pink Energy, as well as its co-conspirators, Defendants Jayson Waller and Trivest Partners, L.P.

2

hereinafter as the "Affidavit." Particularly, Plaintiffs viewed advertisements detailing the alleged superior quality and craftsmanship that Pink Energy used in manufacturing, installing, and maintaining their solar energy systems. *See* Affidavit at ¶ 6-7 and Plaintiffs' Complaint at ¶ 13. Plaintiffs were also drawn to Pink Energy's representation that its systems could eliminate a customer's energy bill nearly altogether. *See* Affidavit at ¶ 6-7.

At the time, none of the Plaintiffs had any experience or knowledge of solar energy systems. Instead, they relied on Pink Energy's advertisements and scheduled an appointment to discuss the potential purchase of a solar energy system. *Id.* at ¶ 8; *see* also, Complaints at ¶ 15-17.

On March 29, 2021, an agent from Pink Energy/Sunlight arrived at Plaintiffs' home to pitch them the solar energy system. *See* Complaint at ¶ 16. The agent claimed that the solar systems would cost about $49,099 and would generate between 55% of the Plaintiffs' monthly electricity needs. *See* Affidavit at ¶ 9. As part of the agent's training, he/she further detailed that the Plaintiffs would qualify for various rebates, credits, and discounts if they signed up for the solar system immediately—essentially eliminating the majority, if not all, of the costs of the solar system. *Id.*

Not wanting to miss out on these alleged promotions, the Plaintiffs felt rushed to enter into both the sales agreement with Pink Energy and the loan agreement with Sunlight. *Id.* at ¶ 10. Taking advantage of this sense of urgency, Pink Energy and Sunlight's sales agent had the Plaintiffs sign the pre-typed Loan Agreement—an 34-page document. The agreements were only visible on a hand-held device that the agent controlled. *See* Complaint at ¶ 50-62. The Plaintiffs only signed and initialed their loan agreements once, and the system that Pink Energy and Sunlight used had the Plaintiffs' signatures and initials auto-filled throughout the sales and loan agreements. *See* Affidavit at ¶ 12-13.

During the rapid "summary" of the agreements, the Pink Energy and Sunlight agent never explained that there was an arbitration provision to either of the Plaintiffs. *Id.* at ¶ 14-18. The agent failed to tell the Plaintiffs that by signing the loan agreement, they would be agreeing to an arbitration that would: (1) give up their right to pursue an action in a court of law; (2) give up their right to a trial by jury; or (3) that they would be limited in the amount of compensation that they could seek. *Id.* Indeed, the Plaintiffs had no idea that there was an arbitration provision or what arbitration was until now. *Id.* at ¶ 15. Instead, they relied on the inaccurate and rapid summaries of the agreements provided by the Pink Energy and Sunlight agent. *See* Complaints at ¶ 62.

Given the circumstances surrounding the agreements, including the pre-typed nature of the agreements on an electronic device that the individual agent controlled, and the condition that any rebates, credits, and/or deductions would only be applied if Plaintiffs immediately signed the agreements, the Plaintiffs felt they had no opportunity to negotiate or review the terms of the contracts. *See* Affidavit at ¶ 22-25. Moreover, Plaintiffs have no legal experience or knowledge that would allow them to fairly negotiate the terms of a complex agreement without the aid of an attorney. *Id.* at ¶ 4.

Notably, Sunlight cannot and does not contest these facts. Sunlight has provided no evidence whatsoever that the loan agreement with Plaintiffs were entered into validly or otherwise not borne of fraud. It has provided no sworn testimony from the sales agent that was present when the loan agreement was signed. It has not provided any recordings of Plaintiffs that indicate they understood the terms of the loan agreement—much less the arbitration clause within the agreement. It has provided no documentation that Plaintiffs signatures were validly obtained throughout the contract rather than auto-filled as detailed above. Sunlight has presented nothing to this Court to demonstrate that the loan agreement was validly entered, as it claims, other than its mere conjuncture.

4

> B. **The Terms of the Arbitration Provisions in the Loan Agreement Are Extremely One-Sided as They Only Permit Sunlight to File Court Actions and Subject the Plaintiffs to Various Forums and Substantial Costs in Pursing Their Claims Against Sunlight, Pink Energy, and The Other Named Defendants.**

The arbitration provisions in the Loan Agreement place a substantial cost burden on the Plaintiffs and essentially eliminate any meaningful ability for them to arbitrate their claims. Specifically, the arbitration provisions provide that Sunlight has no obligation to pay any portion of the arbitration fees and expenses. Rather, the agreement provides that Sunlight will simply "consider any good faith request for [it] to pay [the arbitration fees]." *See* Loan Agreement at Page 13 which is attached herewith and incorporated herein as Exhibit B, and which is referred to hereinafter as the "Loan Agreement." Not only is this provision contrary to AAA and JAMS policy[5], but it also creates a significant cost barrier for the Plaintiffs and other similarly situated customers to pursue their claims against Sunlight—a circumstance that the AAA and JAMS rules are designed to avoid.

The unconscionable, cost-shifting provision, detailed above, provides no clarity on the amount or percentage that Sunlight will pay for arbitration or what "good faith" payment requests Sunlight will entertain. Even assuming the provision required the parties to equally split the fees, it is still unreasonable given the fact that one party is a multi-million-dollar company and the others are blue-collar families.

The current rate to file this matter with JAMS is $3,000 and does not include the arbitrator and administrative costs associated with litigating the matter.[6] Those fees can range

---

[5] *See* JAMS Arbitration Schedule of Fees and Costs, which can be found at https://www.jamsadr.com/consumer-minimum-standards/. The Schedule provides that arbitration involving consumers requires only a $250.00 deposit from the consumer and that all other costs will be borne by the company. *See* also, American Arbitration Association, Consumer Arbitration Rules, at Page 33, which details a that consumer arbitrations require a consumer to pay only a $200.00 deposit.

[6] See JAMS Arbitration Schedule of Fees and Costs as https://www.jamsadr.com/arbitration-fees.

anywhere from $400-$1,200 an hour, which is significant given the complex nature of these cases. The costs associated with arbitrating in AAA no better. Specifically, AAA requires a $1,900 filing fee and a $500 hearing fee. AAA also requires a $1,500 arbitrator compensation fee for every day that the arbitrator spends time on a case. Given the complex nature of Plaintiffs' causes of action, these fees will inevitably become substantial and would prohibit not only Plaintiffs, but others like them, to essentially have no recourse against the defendants in this litigation.

These costs and time concerns are further exacerbated since the arbitration provision in the Loan Agreement does not require arbitration to take place in Ohio. Rather the provision simply requires the arbitration to take place in a location that is "reasonably convenient." If the arbitration takes place outside of Ohio, it could require Plaintiffs to incur increased litigation expenses, as well as travel and lodging expenses for themselves and their witnesses. If the arbitration takes place in Ohio, there may still be travel and lodging expenses for Plaintiffs, and there will likely be travel and lodging expenses for an arbitrator.[7] Moreover, the arbitration provision prohibits the Plaintiffs from joining a class action lawsuit, which could otherwise resolve some of the cost concerns mentioned above. *See* Loan Agreement at Pages 13-14.

However, the prohibitions listed above are not equally applicable to Sunlight. Specifically, Sunlight conveniently carved out an exception to the arbitration provision which permits them to seek certain judicial and self-help remedies if Plaintiffs defaulted on their loan. These provisions not only permit Sunlight to seek a creditor and breach of contract action against Plaintiffs, but further permit Sunlight, without any judicial determination, to remotely disable the solar panel

---

[7] If the parties are ultimately required to arbitrate their claims before JAMS, the nearest JAMS arbitrator that meets the specifications outlined in the arbitration agreements (i.e. ten years of practice or a judge) is located in Detroit, Michigan. AAA does not post their arbitrator locations or qualifications in a place easily accessible on the internet.

6

system on Plaintiffs' home or enter Plaintiffs' home to disable or remove the solar panels. *See* Loan Agreement at Page 7. In contrast, Plaintiffs are not able to initiate any court action or seek any self-help remedy without first engaging in binding arbitration. *Id.*

### III. LAW AND ANALYSIS

**A. The Arbitration Provisions in the Loan Agreement Should be Voided and Disregarded as they were Borne of Fraud and are Unconscionable.**

Binding arbitration in Ohio is controlled and governed by the Ohio Arbitration Act in conformance with the Federal Arbitration Act. *See* Ohio R.C. 2711 *et. seq*. and § 21:3. Ohio Arbitration Act; applicability, Oh. Consumer L. § 21:3. An arbitration clause may be unenforceable on grounds that exist at law or in equity for the revocation of any contract. Ohio R.C. 2711.01(A).

An arbitration clause is unenforceable if it is found by a court to be unconscionable, which requires a showing of substantive and procedural unconscionability. T*aylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12 (2008); and D*eVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194 (Ohio Ct. App. 8th Dist. Cuyahoga County 2015). In determining whether there is a valid arbitration agreement, this Court must view all facts and inferences from those facts in favor of the Plaintiffs, and determine whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists. *Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir.2002).

**i. The Arbitration Provisions in the Loan Agreements are Procedurally Unconscionable as the Plaintiffs' Signatures Were Auto-Filled Throughout the Agreements and Plaintiffs Were Rushed to Sign Without Being Told of the Arbitration Provision.**

Procedural unconscionability is implicated in the formation of a contract when one of the parties is either overborne by a lack of equal bargaining power or is otherwise unfairly and unjustly

7

drawn into a contract. *Wixom v. Union Savings Bank*, 165 Ohio App. 3d 765, 2006-Ohio-1216, 848 N.E.2d 569 (1st Dist. Hamilton County 2006).

Factors and circumstances which may contribute to a finding of unconscionability in the bargaining process include, but are not limited to:

- Whether disparity in bargaining power was used to take unfair advantage of a party[8];

- The relative bargaining power of the parties[9];

- Whether one party has been misled as to the meaning of the contract clause[10];

- Whether the terms were explained to the weaker party[11];

- If there could be no true meeting of the minds where a party is unable to understand an agreement, legal terminology is used, and the agreement does not explain the tremendously overreaching impact of its terms and is misleading due to contradictory and revisable terms[12];

- Where the weaker contracting party proves that it lacked the freedom of choice, understanding, and ability to negotiate the contract and contract terms that unreasonably favor the stronger party[13];

---

[8] *inVentiv Health Communications, Inc*, 2018-Ohio-945, 2018 WL 1320621

[9] *Jones v. U-Haul Co. of Massachusetts and Ohio Inc.*, 16 F. Supp. 3d 922 (S.D. Ohio 2014) (applying Ohio law); *Caley v. Glenmoor Country Club, Inc.,* 2013-Ohio-4877, 1 N.E.3d 471 (Ohio Ct. App. 5th Dist. Stark County 2013).

[10] *Hurst v. Enterprise Title Agency, Inc.,* 157 Ohio App. 3d 133, 2004-Ohio-2307, 809 N.E.2d 689 (11th Dist. Lake County 2004).

[11] *Ball v. Ohio State Home Servs., Inc.,* 168 Ohio App. 3d 622, 2006-Ohio-4464, 861 N.E.2d 553 (9th Dist. Summit County 2006).

[12] *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69 (Ohio Ct. App. 8th Dist. Cuyahoga County 2015).

[13] *Pearson v. ManorCare Health Servs.*, 2015-Ohio-5460, 56 N.E.3d 306 (Ohio Ct. App. 11th Dist. Lake County 2015), *appeal not allowed*, 145 Ohio St. 3d 1471, 2016-Ohio-3028, 49 N.E.3d 1313 (2016); *Kent State Univ. v. Ford,* 2015-Ohio-41, 26 N.E.3d 868, 314 Ed. Law Rep. 1067 (Ohio Ct. App. 11th Dist. Portage County 2015).

- Knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract[14]; and

- Whether the party claiming contract terms are unconscionable was prevented from consulting an attorney as to a required contract clause or was unaware of its impact.[15]

In attempting to quickly sell a faulty system, the Pink Energy and Sunlight salesman attempted to summarize a complex, 34-page legal document. Throughout the sales process, the Pink Energy and Sunlight salesmen falsely promised that the Plaintiffs would only receive various credits and discounts if they acted fast and signed the agreements immediately. The Plaintiffs did as they were told and input their signature and initials once in the DocuSign system that Pink Energy and Sunlight used. Once the system had the signatures, the Loan Agreement auto-filled the remaining lines, including the arbitration provision, with the signatures that the Plaintiffs initially made.

While trying to listen to and understand the salesman's rapid summary of the sales and loan agreements, the Plaintiffs assert that they were never told of an arbitration clause in the loan agreement or that they would be giving up their right to a trial. Instead, the Plaintiffs relied on the Pink Energy and Sunlight salesperson's understanding of the agreement because they have no background in law, contract terminology, or solar panel systems—nor did the sales agent that went to Plaintiffs' home have any such knowledge or background.

However, even if the Plaintiffs wanted to change the terms of the contract, they never had the ability to do so. The terms of the contract were pre-typed on an electronic device that the salesperson controlled, and they could not review the contract alone or with a lawyer, if they wanted to receive the credits and discounts they were promised—and which were ultimately never received.

---

[14] *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408 (2009); Taylor Bldg. Corp. of Am. v. Benfield, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12 (2008).

[15] *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App. 3d 622, 2006-Ohio-4464, 861 N.E.2d 553 (9th Dist. Summit County 2006).

Instead, they felt pressured by a salesman standing over them, who detailed how the Sales Agreement Loan Agreements for $49,099 needed to be signed immediately.

The pressure that the salesmen put on the Plaintiffs to quickly sign the agreement without properly explaining its provisions and auto-filling signatures throughout the document is procedurally unconscionable. This is especially true when considering the standard for a motion to dismiss.

> ii. **Ohio Law Has Found the Arbitration Clauses Like the One at Issue In this Case, Substantively Unconscionable.**

Substantive unconscionability "involves those factors which relate to the contract terms themselves and whether they are commercially reasonable." *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App. 3d 66, 2004-Ohio-5757, 823 N.E.2d 19 (6th Dist. Wood County 2004) (substantive unconscionability found here). Ohio courts have found the following arbitration provisions unconscionable, especially when they involve Consumer Sales Practice Act claims:

- Those that provide for fee-shifting or excess filing costs[16];
- Those that prohibit class action participants or arbitrations[17]; and
- Those that substantially restrict discovery[18].

---

[16] *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, *Legair v. Circuit City Stores, Inc.*, 2005 WL 1865373 (S.D. Ohio 2005), *judgment aff'd,* 213 Fed. Appx. 436, 99 Fair Empl. Prac. Cas. (BNA) 1061, 2007 Fed. App. 0039N (6th Cir. 2007); *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (9th Dist. Summit County 2004); *Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 21 A.D. Cas. (BNA) 1537, 106 Fair Empl. Prac. Cas. (BNA) 438, 92 Empl. Prac. Dec. (CCH) P 43564, 157 Lab. Cas. (CCH) P 60802 (6th Cir. 2009) (cost-splitting provisions in arbitration agreement requiring employee to pay $500 deposit was unenforceable).

[17] See *Eagle*, 157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161 (holding that agreement to compel arbitration of Consumer Sales Practices Act claims was substantively unconscionable because it negated a consumer's right to bring a claim as a class action).

[18] *Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 375, 10 Wage & Hour Cas. 2d (BNA) 609, 150 Lab. Cas. (CCH) P 34961, 2005 Fed. App. 0115P (6th Cir. 2005) (holding that arbitration

The arbitration provisions in the Loan Agreement contain each of these substantially unconscionable provisions. The arbitration provisions do not require Sunlight to incur any portion of the fees associated with the arbitration. Rather, Sunlight will merely consider any "good faith" request that Plaintiffs make. There is no detail as to what portion of the fees Sunlight would pay, how the request must be made, or what is a "good faith" request. The provisions also shift the normal fees associated with a consumer arbitration from only $200.00 to $250.00 to whatever portion Sunlight decides not to pay. Those fees include not only a several thousand dollar filing fee but the cost of the arbitrator's time and travel, which could range upwards of $1,400.00 per hour in the case of JAMS or $1,500.00 a day for AAA. This cost-shifting provision is only exacerbated when considering that the arbitration hearings do not have to take place in Ohio, which could require substantial travel and lodging fees for Plaintiffs and their witnesses. Moreover, the arbitration would require Plaintiffs to litigate their claims against all the defendants in various venues. Specially, if the Plaintiffs wanted to prosecute the same claims it has in this matter, they would each have to file and pay for a separate arbitration against Pink Energy and would further have to litigate their current cases against Jayson Waller and Trivest in court. This is not only unreasonable and highly prejudicial, it would also result in substantial costs and fees to Plaintiffs in filing and litigating their claims in numerous venues.

The arbitration provision also expressly prohibits the Plaintiffs' involvement in class actions. Notably, there are pending class actions throughout various federal and state courts against Pink Energy and Sunlight. This provision prohibits Plaintiffs from joining potentially pending classes, which is notable given that the defendants in this case are also seeking a dismissal of this case to join a class action in Michigan.

---

program that limited discovery to one deposition per side while stating that additional depositions were "not encouraged" could "significantly prejudice employees").

11

Moreover, arbitration in both JAMS and AAA severely limits discovery over the complex issues presented in Plaintiffs' Complaint. If this case were arbitrated by JAMS, it would require confidentiality in the proceedings and would limit discovery to just 14 days. The severely limited discovery procedures in JAMS require the parties to "exchange all documents in their possession and control" but do not permit a party to propound interrogatories, requests for production, or requests for admissions. These discovery procedures also do not permit depositions of witnesses and leave the arbitrator to determine whether certain documents "are necessary" for disclosure. In arbitration, the Plaintiffs would be left hoping that Sunlight produces all relevant documents and that Pink Energy or the other defendants in this case comply with discovery requests in arbitration they may not be bound to. Arbitration under the AAA also limits the discovery process by prohibiting depositions, the scope of discovery, and the execution of subpoenas.

Despite the severe limitations to the arbitration process and harsh cost-shifting rules imposed by Sunlight, the arbitration provisions at issue do not require Sunlight to arbitrate claims against the Plaintiffs. Specifically, the arbitration provisions permit Sunlight to exercise all of the judicial and self-help remedies detailed in loan agreements if Sunlight determines that the Plaintiffs are in default of their agreements with Sunlight. These remedies include, but are not limited to, filing a creditor and breach of contract action against Plaintiffs in state or federal court, and further entering onto Plaintiffs' property to remove and/or deactivate the solar panel systems without judicial approval.

The harshness of the arbitration provisions in the loan agreement, coupled with Sunlight's self-imposed carve-out in arbitrating claims against the Plaintiffs, warrants a finding of substantive unconscionability. Again, this is especially true given the standard for a motion to dismiss.

12

### B. The Arbitration Agreement Does Not Contain a Delegation Clause and This Court Has the Jurisdiction to Determine the Arbitrability of the Loan Agreement.

Sunlight contends that the Arbitration Agreement contains a delegation clause. This is incorrect and a simple reading of the arbitration agreement would dispel any confusion. The pertinent part of the agreement reads as follows:

> (a) Effect of Provision. Unless prohibited by applicable law, you and we agree that either party may elect to require arbitration of any Claim under this Provision.
> \*\*\*
> (b)(ii)… **"Claim" does not include disputes about the validity, enforceability, coverage or scope of this [Arbitration Provision]** or any part thereof…**all such disputes are for a court** and not an arbitrator **to decide**.

*See* Loan Agreement at Page 13 (emphasis added).

Since the agreement does not prohibit this Court from determining the arbitrability of this matter, this Court has jurisdiction to decide the matter.

### C. To The Extent the Arbitration Agreement Contains a Delegation Clause, It Was Concealed in the Middle of the Unconscionable Arbitration Clause And Should Be Voided and Disregarded.

Next, Plaintiffs contend that to the extent Sunlight's Loan Agreements contain a delegation clause, the clauses should be voided because (1) there was no meeting of the minds regarding the arbitration clause nor the delegation clause, (2) the Plaintiffs were unaware that they were signing an agreement to arbitration, let alone that they were agreeing to limit the ability for a court to examine said arbitration clause for unconscionability, and (3) Plaintiffs' alleged consent to the agreements was borne of fraud in the execution and/or fraud in the inducement. It is axiomatic that "arbitration 'is a matter of consent, not coercion." *Chaudhri v. StockX, LLC* (In re StockX Customer Data Sec. Breach Litigation), 19 F.4th 873, 878 (6th Cir.2021). Here, Plaintiffs' consent was never obtained and an agreement to arbitrate or delegate the issue of arbitration was never formed.

13

The Supreme Court has noted that courts should only submit a case to arbitration where "neither formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Id.* (citing *Granite Rock Co. v. Internatl. Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010)). Here, both formation and enforceability of the agreement are at issue.

A delegation clause included within an arbitration agreement allows the arbitrator to decide "not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 878. As such, parties may "delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Id.* at 878.

Under Ohio Law, a valid contract requires an offer, acceptance, and consideration. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58. As the Court is aware, offer and acceptance together is known as "mutual assent" or a "meeting of the minds." *Chaudri at* 881. Whether a meeting of the minds occurred is "judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* To the extent that any language in the Loan Agreement constitutes an agreement to submit arbitrability issues to the arbitrator, Plaintiffs submit that they never agreed to any such term and were unaware of its existence.

Plaintiffs were not aware that an arbitration clause was contained within their agreement, let alone that they were consenting to allow an arbitrator to decide whether their claims were subject to arbitration. As pled in Plaintiffs' Complaint and more fully explained earlier in this Memorandum, the Pink Energy/Sunlight agents responsible for guiding Plaintiffs through the agreement failed to even mention the agreement contained an arbitration clause. *See* Complaint at ¶ 60-62 and Affidavit at ¶ 19, 20. Sunlight's agent controlled the pace of the contract review, displaying

the terms of the agreement on a tablet of which the agent had exclusive control. *See* Complaint at ¶ 60-62 and Affidavit at ¶ 18. Rather than allowing Plaintiffs to review the agreement on their own, the Pink Energy/Sunlight agent would provide a basic summary of the terms as they rapidly scrolled through the document. *See* Affidavit at ¶ 18. The Arbitration Clause itself was buried mid-way through the 34-page agreement. *See* Loan Agreement, generally.

To further obfuscate the terms of the agreements, Sunlight's agent, relying on the training developed by Defendant Jayson Waller, used high-pressure sales tactics to create a sense of urgency in Plaintiffs and ensure the sale would be closed that night. *See* Affidavit at ¶ 9, 10 and Complaint at ¶ 151. This included a threat that Plaintiffs would lose access to certain rebates, credits, and discounts if they did not sign the agreement immediately. *Id.* at ¶9. Furthermore, Plaintiffs were never supplied with their own copy of the agreement to review prior to signing. *Id.* at ¶ 24.

The fact is, neither the Pink Energy/Sunlight agent nor Plaintiffs acted in a manner consistent with a meeting of the minds as to the arbitration clause. Sunlight's agent never uttered the words arbitration or "arbitrability issues" to Plaintiffs. It was simply not a part of closing the deal nor was it contemplated by Plaintiffs when they agreed to have solar panels installed on their homes. The Pink Energy/Sunlight agent's sole purpose was to close the sale on the same day they were present at each of the Plaintiffs' homes. There was no interest in ensuring Plaintiffs had access to the terms and conditions of the agreement nor ensuring that Plaintiffs were making informed decisions. To the contrary, the goal was to pressure Plaintiffs into signing the agreements by withholding key information through control of the agreement via tablet and to ensure that the Plaintiffs had no chance to reflect on their decision prior to signing. This type of high-pressured strategy is Defendant Waller's *modus operandi,* and it was executed by the Pink Energy/Sunlight agent to perfect effect.

These facts are directly on point with a recent Third Circuit opinion in which that court refused to enforce a delegation clause on the issue of arbitrarily where the plaintiffs plead fraud in the execution. Specifically, the Third Circuit held that fraud in the execution typically involves "some sort of misconduct or imposition that cuts off the signer's opportunity to read [a contract], such as 'significant time pressure' and reliance on an erroneous 'assurance' that the parties' oral understanding had been or would be accurately memorialized in an instrument." *MZM Construction Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 404 ("Because [plaintiffs] stated a claim of fraud in the execution…[they] put the formation of the delegation provision in issue and thus triggered the District Court's power to adjudicate the claim") (citing: *Connors v. Fawn Min. Corp.*, 30 F.3d 483, 490, 492-493 (3d Cir. 1994) (concluding that fraud in the execution occurs where a party "surreptitiously substitutes a materially different contract before or after counterparty signs").

In the matter at bar, the fraudulent conduct described above is yet another reason for this Court to disregard the arbitration provision in the loan agreements and permit the consolidated matters to proceed before this Court.

## IV. **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request this Court deny Sunlight's Motion to Dismiss or Enforce Arbitration. Alternatively, this Court should grant the Plaintiffs request to stay this matter and permit limited discovery on their declaratory judgment actions to determine whether the arbitration agreement is enforceable.

Respectfully submitted,

By: */s/ Andrew R. Burton*
Stacie L. Roth (0071230), and
Andrew R. Burton (0100996), and
Richard D. Reinbold (0024152), of
**SCHULMAN, ROTH & ASSOC. CO., LPA.**
236 3rd Street SW
Canton, Ohio 44702
(330) 456-4400 (telephone)
(330) 456-3641 (FAX)
sroth@lawyersonyourside.com
aburton@lawyersonyourside.com
rdreinbold@yahoo.com
And

By: */s/ Robert J. Tscholl*
Robert J. Tscholl (0028532)
Robert J. Tscholl, LLC
236 3rd Street SW
Canton, Ohio 44702
330-497-8614
330-456-3641 (FAX)
Btscholl740@@yahoo.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on June 26, 2022, a true and accurate copy of the foregoing was filed on the Court's ECF system. Notice of this filing will be delivered to counsel of record by the Court's ECF system. Copies of the filing are available from the Court's system.

*/s/ Andrew R. Burton*
Andrew R. Burton
Counsel for Plaintiffs